No. 25-2118

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

Equal Employment Opportunity Commission,
    Plaintiff-Appellant,

v.

Covius Services, LLC,
    Defendant-Appellee.

---

On Appeal from the United States District Court
for the Eastern District of Washington
No. 2:23-cv-00186
Hon. Thomas O. Rice

---

**OPENING BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AS PLAINTIFF-APPELLANT**

---

ANDREW B. ROGERS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

STEVEN WINKELMAN
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

# TABLE OF CONTENTS

Table of Authorities ..................................................................................iii

Introduction .................................................................................................1

Statement of Jurisdiction............................................................................2

Statement of the Issue................................................................................2

Statement of the Case .................................................................................3

      A.     Factual background...............................................................3

            1.     Ebert applies for an entry-level data-entry position at Covius. .................................................................................3

            2.     Covius interviews Ebert, who discloses her disabilities and use of prescription pain-management medication....................................................................5

            3.     Covius refuses to hire Ebert, expressly citing her conditions and pain-management medication, and Aerotek recruiter Haleigh Richardson communicates the decision to Ebert. .............................................................7

            4.     Covius offers a shifting account for refusing to hire Ebert and hires equally or less qualified candidates without disabilities for the same position. .........................11

      B.     District court decisions. ..................................................14

Standard of Review....................................................................................17

Summary of Argument ..............................................................................19

Argument .....................................................................................................21

I.     The district court erred in granting judgment as a matter of law at trial. .............................................................................................21

i

A.     The district court abused its discretion in striking Richardson's interview-feedback email and related evidence on hearsay grounds. ......................................................21

     1.     The interview-feedback email was admissible under the business-record exception. .............................................21

     2.     The interview-feedback email was admissible under the residual exception. ..........................................................28

     3.     There is no independent basis for excluding other exhibits that referenced the interview-feedback email or related testimony. ...........................................................33

B.     Alternatively, the EEOC presented other circumstantial evidence from which a reasonable jury could infer disability discrimination. ................................................................34

Conclusion.....................................................................................................40

Addendum ................................................................................................ A-1

Certificate of Compliance

Certificate of Service

ii

# TABLE OF AUTHORITIES

**Cases**

*Akridge v. Alfa Ins. Cos.*,
   93 F.4th 1181 (11th Cir. 2024) ................................................................35

*Bostock v. Clayton Cnty.*,
   590 U.S. 644 (2020) ................................................................................35

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000) ................................................................38

*Costa v. Desert Palace, Inc.*,
   299 F.3d 838 (9th Cir. 2002) (en banc), *aff'd*, 539 U.S. 90 (2003)...................35

*Dennis v. Fitzsimons*,
   850 F. App'x 598 (10th Cir. 2021) ..........................................................37

*EEOC v. BNSF Ry. Co.*,
   902 F.3d 916 (9th Cir. 2018) ..................................................................34

*Hartzell v. Marana Unified Sch. Dist.*,
   130 F.4th 722 (9th Cir. 2025) ..............................................................3, 18

*Haydar v. Amazon Corp., LLC*,
   No. 19-2410, 2021 WL 4206279 (6th Cir. Sept. 16, 2021) ............................25

*Humphrey v. Mem'l Hosps. Ass'n*,
   239 F.3d 1128 (9th Cir. 2001) ................................................................36

*In re Mbunda*,
   604 F. App'x 552 (9th Cir. 2015) ............................................................29

*In re Oil Spill by the Oil Rig Deepwater Horizon*,
   MDL No. 2179, 2012 WL 85447 (E.D. La. Jan. 11, 2012)..............................26

*Kinney v. Emmis Operation Co.*,
   291 F. App'x 789 (9th Cir. 2007) ............................................................37

*Martinez v. Astrue,*
256 F. App'x 75 (9th Cir. 2007) ....................................................................38

*McGinest v. GTE Serv. Corp.,*
360 F.3d 1103 (9th Cir. 2004) ......................................................................39

*Murray v. Mayo Clinic,*
934 F.3d 1101 (9th Cir. 2019) ......................................................................35

*Opara v. Yellen,*
57 F.4th 709 (9th Cir. 2023).........................................................................35

*Reed v. Lieurance,*
863 F.3d 1196 (9th Cir. 2017) ......................................................................18

*Reeves v. Sanderson Plumbing Prods., Inc.,*
530 U.S. 133 (2000)......................................................................................39

*Revels v. Berryhill,*
874 F.3d 648 (9th Cir. 2017) ..........................................................................3

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC,*
285 F.3d 808 (9th Cir. 2002) ........................................................................22

*Smith v. Helzer,*
95 F.4th 1207 (9th Cir. 2024).......................................................................19

*Sprenger v. Fed. Home Loan Bank of Des Moines,*
253 F.3d 1106 (8th Cir. 2001) ......................................................................37

*Susanno v. Lee Cnty. Bd. of Cnty. Comm'rs,*
852 F. Supp. 980 (M.D. Fla. 1994), *aff'd*, 48 F.3d 536 (11th Cir. 1995) .........17

*Teneyck v. Omni Shoreham Hotel,*
365 F.3d 1139 (D.C. Cir. 2004)....................................................................35

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.,*
875 F.2d 1369 (9th Cir. 1989) ......................................................................18

iv

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*,
  576 F.3d 1040 (9th Cir. 2009) ...................................................................22

*United States v. Bueno-Sierra*,
  99 F.3d 375 (11th Cir. 1996) ............................................................. 24, 25

*United States v. Castro*,
  704 F. App'x 675 (9th Cir. 2017), *as amended on denial of reh'g and reh'g
  en banc* (Nov. 1, 2017) ...............................................................................27

*United States v. Foster*,
  711 F.2d 871 (9th Cir. 1983) ............................................................. 22, 30

*United States v. Heatherly*,
  985 F.3d 254 (3d Cir. 2021) .......................................................................24

*United States v. Huber*,
  772 F.2d 585 (9th Cir. 1985) ......................................................................23

*United States v. Lischewski*,
  860 F. App'x 512 (9th Cir. 2021) ......................................................... 22, 23

*United States v. Ray*,
  930 F.2d 1368 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23,
  1991) ............................................................................................................25

*United States v. Sanchez-Lima*,
  161 F.3d 545 (9th Cir. 1998) ......................................................................29

*United States v. Scholl*,
  166 F.3d 964 (9th Cir. 1999), *as amended on denial of reh'g* (Mar. 17,
  1999) ............................................................................................................28

*United States v. Smith*,
  804 F.3d 724 (5th Cir. 2015) ......................................................................27

*United States v. Town of Colo. City*,
  935 F.3d 804 (9th Cir. 2019) ......................................................................18

v

*United States v. Turner*,
    189 F.3d 712 (8th Cir. 1999) ..................................................................25

*Velazquez v. City of Long Beach*,
    793 F.3d 1010 (9th Cir. 2015) ...............................................................18

*Wheeler v. Sims*,
    951 F.2d 796 (7th Cir. 1992) .................................................................23

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,
    274 F.3d 1276 (9th Cir. 2001) ...............................................................40

**Statutes**

28 U.S.C. § 1291 .........................................................................................2

28 U.S.C. § 1331 .........................................................................................2

28 U.S.C. § 1343 .........................................................................................2

28 U.S.C. § 1345 .........................................................................................2

42 U.S.C. § 12101 .......................................................................................2

42 U.S.C. § 12112 .....................................................................................34

**Rules**

Fed. R. App. P. 4 .........................................................................................2

Fed. R. Civ. P. 50 ......................................................................................17

Fed. R. Evid. 801 ......................................................................................25

Fed. R. Evid. 803 .............................................................................. *passim*

Fed. R. Evid. 807 .......................................................................... 15, 28, 29

**Other Authorities**

30B Wright & Miller's Fed. Prac. & Proc. §§ 6863, 6866 (2025 ed.) ......... 26, 28

## INTRODUCTION

Covius Services, LLC refused to hire Kelli Ebert not because she was unqualified, but because she took legitimate, physician-prescribed pain-management medications to treat her fibromyalgia and chronic migraines. Seeking to remedy that unlawful employment practice, the Equal Employment Opportunity Commission (EEOC) filed this disability discrimination action and presented its case to a jury. But the district court did not allow the jury to render a verdict. Instead, in the middle of trial, the court struck on hearsay grounds an email and related evidence which offered direct proof that Covius chose not to hire Ebert because of her conditions and medication. The court then dismissed the action, finding that the EEOC was unable to establish disability discrimination without the stricken evidence, and entered final judgment.

The decision below rested principally on two errors, either of which compels vacatur. First, the court's evidentiary ruling, which was the sole basis for its dismissal of the case, turned on basic misunderstandings about the business-record and residual exceptions to the rule against hearsay under the Federal Rules of Evidence, and was premised on factual findings plainly contradicted by the record. Second, even overlooking those

problems, the court did not consider other circumstantial evidence from which a reasonable jury could have found that Covius discriminated against Ebert on the basis of disability.

Accordingly, the court's judgment must be vacated and the case remanded so the proper factfinder—a jury—can decide whether Covius is liable for its conduct.

## STATEMENT OF JURISDICTION

The EEOC brought this enforcement action against Covius under Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 *et seq.* 2-ER-210-11. The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1345. The district court entered final judgment on January 28, 2025. 1-ER-2. The EEOC timely appealed on March 28, 2025. 2-ER-286-88; *see* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court erred in dismissing this action mid-trial because: (1) the court abused its discretion in striking an email and related evidence that offered direct proof of disability discrimination, or

2

(2) alternatively, the EEOC presented other circumstantial evidence from which a reasonable jury could have inferred disability discrimination.

## STATEMENT OF THE CASE

### A. Factual background.

Because the district court dismissed this action mid-trial, we draw these facts from the testimony and evidence presented at trial and the parties' stipulations. This Court must consider the trial record in the light most favorable to the EEOC, as the non-moving party, and draw all reasonable inferences in its favor. *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 734 (9th Cir. 2025).

### 1. Ebert applies for an entry-level data-entry position at Covius.

Kelli Ebert suffers from fibromyalgia[1] and migraines, which cause her chronic pain. 2-ER-101; 5-ER-906:5-6, 910:14-911:3. To manage her conditions, Ebert takes physician-prescribed pain-management medications, including Oxycodone. 2-ER-101; 5-ER-912:11-22. That

---

[1] "Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (citation modified).

treatment enables Ebert to perform basic life activities and, importantly, to work. 5-ER-912:25-913:7.

In early 2020, Ebert was using a staffing agency, Aerotek, to search for new employment opportunities. 5-ER-933:7-6. In March, an Aerotek recruiter, Haleigh Richardson,[2] contacted Ebert about two "Non-Escrow Tax Specialist" openings with a mortgage company that Ebert would later learn was Covius. 5-ER-939:14-23, 942:21-943:6; 2-ER-233; *see also* 4-ER-578:4-19; 2-ER-232. Despite the technical-sounding title, the position was essentially an entry-level data-entry job (paying $14.50 an hour) for which Covius preferred little more than two years of college or a year of work experience, and familiarity with Microsoft software. 3-ER-431:22-432:5, 538:20-539:25, 542:4-543:8, 545:3-5; 2-ER-233. The position did not require tax or mortgage-loan-servicing experience, and people Covius hired for that role usually did not have such experience. 3-ER-461:16-23, 540:19-541:4, 548:1-4, 548:25-549:12.

---

[2] Some testimony and evidence refer to Richardson using her former last name, Dobson. 3-ER-418:14-19. For clarity, we refer to her only as Richardson.

Interested in the position, Ebert asked Richardson to forward her resume. 5-ER-942:15-17. Aerotek did not send a resume that Ebert had made, but instead sent a "summary" of Ebert's work experience that Richardson had generated. 3-ER-420:7-12, 467:7-12; 2-ER-235-38; 2-ER-246-48. By the next morning, Covius wanted to interview Ebert. 5-ER-942:18-943:12; 2-ER-241-43. Ebert agreed and Richardson set up the interview for that afternoon. 2-ER-244-45.

### 2. Covius interviews Ebert, who discloses her disabilities and use of prescription pain-management medication.

Ebert interviewed on March 6. 2-ER-101. She arrived early and brought copies of her resume. 5-ER-944:7-12. Two Covius representatives interviewed Ebert: Alan Smelko, the manager of Covius's tax department, and Andrea Diaz, a Covius tax supervisor. 5-ER-944:3-945:18; 3-ER-536:4-16. Ebert later called it a "standard interview," with Smelko or Diaz asking Ebert to tell them about herself and her work history, which she did. 5-ER-945:21-24. At some point, Ebert realized that the summary Richardson made misstated two of Ebert's former employers' cities; Ebert promptly corrected the error and provided a copy of her resume. 5-ER-945:25-946:5.

Aside from that minor hiccup, the interview went smoothly. 5-ER-946:11-23.

Smelko ended every interview by mentioning that Covius had a strict pre-employment drug-testing requirement and asking whether the candidate had any concerns about that. 4-ER-691:6-692:21. Ebert testified that during her interview, she disclosed her fibromyalgia and migraines, and that she takes pain-management medication to treat those conditions. 5-ER-947:1-948:1. Corroborating that testimony, Smelko testified that he assumed Ebert would have disclosed that information in response to his standard question about Covius's drug-testing policy. 4-ER-709:25-710:7. Apparently finding that disclosure remarkable, Smelko wrote the words "MIGRAINS" (sic) and "PAIN MGMT Med's" (sic) at the top of his copy of Ebert's resume. 4-ER-709:14-24; 2-ER-250; *see also* 4-ER-693:9-16 (Smelko agreeing that his notes generally reflected only "things that jumped out at [him] as relevant"). With that, Smelko and Diaz walked Ebert out the door and said they would get back to her. 5-ER-948:2-8.

### 3. Covius refuses to hire Ebert, expressly citing her conditions and pain-management medication, and Aerotek recruiter Haleigh Richardson communicates the decision to Ebert.

Less than a week after the interview, on March 12, Richardson emailed Ebert to provide Covius's feedback from the interview. 5-ER-948:11-16. In relevant part, the email read:

> They [Covius] thought you had great experience and were capable of completing the role, especially with your mortgage knowledge from previous roles. Unfortunately, they have their own prescreening process after extending an offer. *You had mentioned you are on pain medication for your migraines which they were completely understanding about, but their pre screening process does not allow for pain medication as you would be working with finances.* They would be interested in meeting with you again if everything were to get better!

2-ER-252 (emphasis added). Richardson then offered Ebert information about a role with a different employer that "does not do a drug test for hire." 2-ER-252.

Importantly for purposes of the hearsay exceptions at issue here, Richardson regularly collected interview feedback from Covius and conveyed it to job candidates. At that time, Covius used Aerotek to staff positions like the one to which Ebert had applied, and the companies had established lines of communications. *See* 3-ER-551:20-552:5; 4-ER-695:23-696:2. When Covius interviewed but decided not to hire a candidate

7

Aerotek had referred, Covius would not communicate that decision directly to the candidate (like Ebert) or to the Aerotek recruiter (like Richardson). 3-ER-421:11-13, 503:23-504:7. Instead, Covius would communicate the decision to an Aerotek "account manager,"[3] who served as an intermediary between Covius and Aerotek recruiters. 3-ER-494:6-8.

After an interview, Covius would contact the Aerotek account manager (typically by phone) to provide feedback about the candidate. 3-ER-503:1-10; 4-ER-580:24-581:2, 581:11-13, 582:3-20, 604:22-605:6. The Aerotek account manager then gave that information to the Aerotek recruiter who, in turn, shared it with the candidate. 3-ER-503:11-15. Richardson confirmed that "part of [her] job" was "to notify a candidate" about hiring decisions, and she generally provided feedback soon after she received it. 3-ER-456:5-21.

Here, Richardson followed that established procedure in collecting and conveying Covius's feedback about Ebert. In line with standard

---

[3] Technically, two positions served this intermediary function at Aerotek: "account managers" and "account *recruiting* managers." 3-ER-494:6-8. Those roles were largely the same except for supervisory duties that have no bearing here. 3-ER-494:8-14. For simplicity, we use the term "account manager" to refer to both positions.

protocol, Richardson received Covius's interview feedback about Ebert from one of two Aerotek account managers, Brittany Ostrander[4] or Madelyn Gerety, although she could not recall which. 3-ER-421:5-10, 440:4-15, 451:14-15, 456:15-18, 469:23-470:25, 476:20-477:10; 2-ER-283.[5] Richardson further testified that "Aerotek [got] the feedback from Covius," 3-ER-466:17-19, and that she believed Diaz (one of the Covius representatives who interviewed Ebert) provided Covius's feedback about Ebert, 3-ER-441:10-12, 464:25-466:19. The communications here thus went like this:

---

[4] Some testimony and evidence refer to Ostrander using her former last name, LeFleur. 3-ER-489:14-23. For clarity, we refer to her only as Ostrander.

[5] At trial, Covius's counsel asked Richardson whether "one of three people" from Aerotek might have conveyed Covius's feedback to her, and Richardson agreed that was true. *E.g.*, 3-ER-470:9-25, 473:16-18, 486:17-21. But Richardson consistently identified only two such individuals, Ostrander and Gerety. *E.g.*, 3-ER-470:6-8. Richardson never identified a third person, and it is unclear who that might have been. Ostrander was similarly unable to identify anyone else from Aerotek who might have conveyed Covius's feedback to Richardson. 3-ER-531:15-532:16. At worst, Richardson appears to have been misled by the question.

9



Consistent with Richardson's testimony, Ostrander confirmed that she and Gerety both served as account managers on the matter at different points, but that she (Ostrander) was the account manager by the time of Ebert's interview. 3-ER-494:18-496:5; 2-ER-226-27; *see also* 2-ER-239-40, 246, 258-59, 261-68. Although Ostrander was not certain, she believed Diaz would have communicated Covius's decision to her over the phone. 3-ER-508:23-509:2, 522:24-523:18. That belief was consistent with her previous understanding: When an Aerotek employee relations representative investigating Ebert's allegations emailed Ostrander to ask whether "this [was] escalated … when Andrea Diaz gave you the verbal feedback stating that they wanted to pass due to the candidate[']s disability," Ostrander did not push back on that characterization—instead, she simply responded, "It was not." 3-ER-512:25-513:11; 2-ER-278-79.

10

Diaz similarly confirmed that she usually conveyed Covius's hiring decisions to Aerotek, that Ostrander was her primary contact at Aerotek in March 2020, and that she (Diaz) typically called Ostrander to convey feedback. 3-ER-553:11-18, 554:13-555:4; 2-ER-226-27; 4-ER-569:12-15, 604:22-605:6. Indeed, Diaz said it was "standard practice" for her to contact Ostrander after an interview to "tell her how it went." 4-ER-580:24-581:4, 581:11-13, 582:3-20. Although Diaz could not specifically remember calling Ostrander about Ebert, Diaz agreed she would have done so. 4-ER-620:12-14.

### 4. Covius offers a shifting account for refusing to hire Ebert and hires equally or less qualified candidates without disabilities for the same position.

During the EEOC's investigation, Covius's account of Ebert's interview and the company's decision-making process rested on three key facts. First, Covius maintained that Diaz was the relevant decisionmaker who "made the decision not to staff Ms. Ebert." 2-ER-272. Second, Covius maintained that Ebert volunteered information about her conditions and medication "without prompting or inquiry from" Diaz or Smelko. 2-ER-272, 274. Finally, Covius maintained that Diaz chose not to hire Ebert because the pre-interview candidate summary Richardson provided

11

contained errors, suggesting an inattention to detail, and because Ebert had indicated she was "unable to regularly attend work." 2-ER-272-75. Covius supplied a statement signed by Diaz attesting to these facts. 2-ER-277.

At trial, Covius's version of events unraveled. First, Diaz conceded that Covius's assertion—and her own prior statement—that she (Diaz) made the hiring decision was false. 4-ER-628:1-11, 633:11-21. Instead, Diaz testified that Smelko alone made the decision, 4-ER-619:21-620:2, and Smelko agreed that he generally "made the final call," 4-ER-695:21-22. Second, although Covius claimed Ebert disclosed her conditions and medication unprompted, Smelko assumed Ebert mentioned them in response to his drug-policy questions. 4-ER-709:25-710:7. Finally, although Covius claimed it did not hire Ebert because of errors in the candidate summary and because of potential attendance issues, Smelko could "not remember the reason for [his] decision," 4-ER-711:7-9, Diaz said she generally did not rely on Aerotek's candidate summaries and could not "recall reading them even," 4-ER-653:24-654:10, and Diaz could not recall raising any concerns that Ebert's migraines might affect her attendance, and did not believe she would have done so, 4-ER-671:17-672:11. What is more, interview notes revealed that Diaz gave Ebert a passing score, and

12

Diaz "personally would be *willing* to hire someone" with the same score. 4-ER-618:14-619:2 (emphasis added); *see also* 2-ER-250.

Additionally, Covius hired candidates who did not have disabilities or take pain-management medication despite their having credentials similar to or worse than Ebert. For instance, Covius hired for the same kind of position at least two candidates, Alexis Gilbertson and Thomas Thayer, who neither shared Ebert's level of education nor had relevant mortgage experience. *Compare* 2-ER-249-51, *with* 2-ER-228, 231; *see also* 4-ER-637:14-638:3, 639:22-640:2, 641:4-8, 743:4-8, 744:2-6. Diaz did not know or could not recall whether Gilbertson or Thayer had a disability or took prescription pain-management medications, and there is no evidence suggesting that they did. 4-ER-638:4-7, 641:10-17. Another candidate, Rosalee Sharnetsky, whom Covius specifically hired for one of the two openings to which Ebert applied, similarly did not share Ebert's level of education. 4-ER-755:11-24; 2-ER-229-30. Covius also delayed Sharnetsky's start date until after she fully healed from a recent hand surgery, further reflecting the company's preference for employees without impairments. 3-ER-500:1-23; 4-ER-783:9-784:8; 2-ER-254-57.

13

Covius's employment practices also demonstrated considerable inattention to the company's ADA obligations. Despite making questions about Covius's drug-testing policy a regular fixture in their interviews, Smelko and Diaz could not recall receiving any training on that policy and they did not know how the drug-testing process worked. 4-ER-575:9-576:3, 674:12-19, 716:15-24, 720:15-721:8. Covius did not offer any such training. 4-ER-823:23-25.

### B. District court decisions.

Before trial, Covius stipulated that Ebert had two physical impairments, chronic migraines and fibromyalgia, and that she takes prescription medication, including Oxycodone, to treat those impairments. 2-ER-101. Covius further stipulated that Ebert would have passed the workplace drug test even with her prescription medications. 2-ER-102.

On the EEOC's motion, the district court pre-admitted Richardson's interview-feedback email. 1-ER-30-36; *see also generally* 2-ER-189-207; 2-ER-142-86. The court determined that the email was not admissible under the business-record exception of Federal Rule of Evidence 803(6). Although the court found that "[t]he email was sent in the regular course of business" and that "it was regular practice for [Aerotek's] employees to send and

14

receive emails of this sort of content with potential candidates," the court reasoned that the email was not a business record because Richardson did not speak with Diaz directly and thus "did not have personal knowledge of the events in the email." 1-ER-33-34. But the court determined that the email was admissible under the residual exception of Federal Rule of Evidence 807 because it bore "sufficient guarantees of trustworthiness" and was "more probative of [Covius's] alleged discrimination than any other evidence." 1-ER-34-35. The court also determined that Richardson's testimony was admissible to explain "what [she] was thinking" when she wrote the email. 1-ER-36.

At trial, the district court admitted the interview-feedback email without objection. 3-ER-440:16-441:2; 2-ER-252-53. As outlined above, Richardson consistently testified that she received Covius's interview feedback from an Aerotek account manager, Ostrander or Gerety. *Supra* at 8-10. On cross, Covius's counsel asked Richardson whether it was "possible" she included Covius's feedback about Ebert's pain-management medication to "soften the message," and Richardson agreed that it was. 3-ER-479:11-17. On redirect, Richardson clarified that she did not

15

"manufacture" Covius's feedback, and that it "was the statement [she] heard." 3-ER-479:21-23.

After the EEOC presented its case-in-chief and on Covius's motion, the district court struck from evidence Richardson's interview-feedback email, other exhibits that contained the email, and, implicitly, testimony concerning the email.[6] 5-ER-1017:9-10; 1-ER-5-6; 2-ER-57. From the bench, the court offered two principal reasons for its ruling. First, despite Richardson's testimony that she received Covius's feedback from Ostrander or Gerety, the court found Richardson had "no idea where she got th[at] information." 5-ER-1009:13-15, 1010:7-9, 1016:5-7, 1017:2-3. Second, despite Richardson's testimony denying that she manufactured Covius's feedback about Ebert's pain-management medication, the court appeared to believe Richardson had admitted to just that, finding that she "put that [information] in there to soften the message to Kelli Ebert." 5-ER-1009:15-17, 1017:3-5.

---

[6] The court's oral ruling did not mention testimony, but Covius's motion asked the court to strike both Richardson's email and "all testimony concerning it." 2-ER-87.

16

Without warning, the district court also stated there was a pending "motion to dismiss." 5-ER-1013:13-18. Taking the court's cue, Covius's counsel abruptly made an oral motion to dismiss, asserting that Richardson's email had been "the only alleged piece of evidence that the EEOC has ever had." 5-ER-1013:23-1014:11. After giving the EEOC mere moments to respond, the court summarily concluded the EEOC had "not established even a prima facie case," announced it was "dismissing the case," and adjourned. 5-ER-1017:8-13.

The court later issued a text-only order granting Covius's oral motion to dismiss "for the reasons stated on the record," and entered final judgment. 1-ER-2-4. The EEOC timely appealed. 2-ER-286-88.

## STANDARD OF REVIEW

Although the district court did not say under what authority it granted dismissal, we construe its mid-trial disposition of the case as a grant of judgment as a matter of law under Federal Rule of Civil Procedure 50(a). *See Susanno v. Lee Cnty. Bd. of Cnty. Comm'rs*, 852 F. Supp. 980, 981 (M.D. Fla. 1994) (construing mid-trial motion to dismiss as motion for judgment as a matter of law), *aff'd*, 48 F.3d 536 (11th Cir. 1995).

17

This Court reviews de novo an order granting judgment as a matter of law at trial. *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 734 (9th Cir. 2025). "Judgment as a matter of law is proper when the evidence permits a reasonable jury to reach only one conclusion." *Id.* (citation omitted). Conversely, "if conflicting inferences may be drawn from the facts presented at trial, the case must go to the jury." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (citation modified). This Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (citation omitted).

This Court reviews a district court's evidentiary rulings for abuse of discretion, but it "review[s] de novo the court's interpretation of [a] hearsay rule." *United States v. Town of Colo. City*, 935 F.3d 804, 807 (9th Cir. 2019). "A district court abuses its discretion by basing its decision on clearly erroneous factual findings or by applying an incorrect legal standard." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1378 (9th Cir. 1989). "A finding of fact is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction

18

that a mistake has been committed." *Smith v. Helzer*, 95 F.4th 1207, 1214 (9th Cir. 2024) (citation modified).

## SUMMARY OF ARGUMENT

The district court erred in granting judgment as a matter of law to Covius for two independently sufficient reasons.

First, the court's dismissal turned entirely on its erroneous decision to reverse its earlier evidentiary ruling and strike Richardson's interview-feedback email and related evidence. Contrary to that ruling, Richardson's email was admissible under either of two hearsay exceptions: the business-record or residual exceptions. The email was admissible under the business-record exception because Richardson made it at or near the time of the event it recorded (i.e., Covius's decision not to hire Ebert), based on information from someone with knowledge (i.e., Ostrander or Gerety), and as part of a regular business practice by which Aerotek made and kept such communications. Alternatively, the email was admissible under the residual exception because, as the district court itself initially found, the email bore sufficient circumstantial guarantees of trustworthiness and was more probative of Covius's intent than any other evidence the EEOC could reasonably obtain. In ruling otherwise, the district court abused its

19

discretion by applying an incorrect legal standard and by relying on clearly erroneous factual findings.

Second, even if Richardson's interview-feedback email and related evidence had been properly stricken, dismissal was still inappropriate. That is because the EEOC presented other circumstantial evidence from which the jury could have reasonably found that Covius refused to hire Ebert on the basis of her fibromyalgia or migraines, or on the basis of her use of pain-management medication to treat those conditions. That evidence included: the close temporal proximity between Ebert's disclosure of her conditions and medications, and Covius's decision not to hire her; Smelko's interview notes and testimony, which showed that he viewed Ebert's conditions and medications as relevant considerations; Covius's hiring of similarly or less qualified candidates who did not have the same conditions or use pain-management medication; and Covius's shifting account of its decision-making process.

20

## ARGUMENT

**I.    The district court erred in granting judgment as a matter of law at trial.**

    **A.    The district court abused its discretion in striking Richardson's interview-feedback email and related evidence on hearsay grounds.**

Under a proper application of the rules of evidence, Richardson's interview-feedback email was admissible under the business-record or residual exceptions to the rule against hearsay. In ruling otherwise, the district court abused its discretion by applying an incorrect legal standard and relying on clearly erroneous factual findings. That faulty evidentiary ruling, which was the sole basis for the district court's dismissal, compels vacatur.

        **1.    The interview-feedback email was admissible under the business-record exception.**

Federal Rule of Evidence 803(6) excepts business records from the rule against hearsay. *See* Addendum at A-1. To show that a record of an act or event constitutes a business record, a proponent must establish two foundational facts: (1) the record was made at or near the time of the event by — or based on information from — someone with knowledge; and (2) the record was kept in the course of a regularly conducted business activity

21

and making the record was a regular practice of that activity. Fed. R. Evid. 803(6)(A)-(C); *Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 819 (9th Cir. 2002). Furthermore, the proponent must establish these conditions "by the testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6)(D). Like any other documentary evidence, an email qualifies as an admissible business record when it satisfies these conditions. *See United States v. Lischewski*, 860 F. App'x 512, 516 (9th Cir. 2021) (affirming district court's admission of email under business-record exception); *see also U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009) ("We have made clear that for the purposes of Rule 803(6), it is immaterial that the business record is maintained in a computer rather than in company books." (citation modified)).

Under a straightforward application of the foregoing standard, Richardson's interview-feedback email was an admissible business record. *First*, it is uncontested that Richardson provided Covius's interview feedback "pursuant to established procedures," and that Aerotek kept such communications "in the 'regular course' of a business activity." *United States v. Foster*, 711 F.2d 871, 882 (9th Cir. 1983). The district court determined as much, finding that "[t]he email was sent in the regular

22

course of business" and that "it was regular practice for [Aerotek's] employees to send and receive emails of this sort of content with potential candidates." 1-ER-34. Covius has never argued otherwise.

*Second*, Richardson made the email at or near the time of the relevant event: she sent it on March 12, just six days after the interview on March 6. *See United States v. Huber*, 772 F.2d 585, 591 (9th Cir. 1985) ("All that the rule requires is that the document be made 'at or near the time' of the act or event it purports to record."); *see also Wheeler v. Sims*, 951 F.2d 796, 804 (7th Cir. 1992) ("eleven-day interval" showed record was made "at or near the time" of relevant event). Richardson also wrote the email based on information from someone with knowledge: she received Covius's interview feedback from an Aerotek account manager (Ostrander or Gerety) who, in turn, received the information from Diaz. 3-ER-421:5-10, 440:4-15, 441:10-12, 451:14-15, 456:15-18, 464:25-466:19, 469:23-470:25, 476:20-477:10; 2-ER-283.

*Third*, Richardson was a qualified witness to establish these conditions because she personally made the record and had knowledge of the practice by which it was made. *See Lischewski*, 860 F. App'x at 516

23

(admitting email under business-record exception where email's author testified at trial).

In reaching a contrary result, the district court found that Richardson's email was not a business record because she "did not communicate with Diaz directly to learn of the rejection" and thus lacked "personal knowledge" of the recorded event. 1-ER-33. But Rule 803(6) does not require a business record to be made by someone with knowledge—let alone *personal* knowledge—of the recorded event. Instead, the rule says the record may be made "by—*or from information transmitted by*—someone with knowledge." Fed. R. Evid. 803(6)(A) (emphasis added); *see also United States v. Heatherly*, 985 F.3d 254, 270 (3d Cir. 2021) (user logs were business records where, among other things, "they were made contemporaneously *based on information from someone with knowledge*" (emphasis added)); *United States v. Bueno-Sierra*, 99 F.3d 375, 379 (11th Cir. 1996) ("[T]he proponent must establish that it was the business practice of the recording entity to obtain such information *from persons with personal knowledge*….").

Here, the event Richardson's email recorded was Covius's refusal to hire Ebert, and Richardson made that record based on information from

24

someone with knowledge, namely, Ostrander or Gerety.[7] That is all

Rule 803(6) requires. *See Haydar v. Amazon Corp., LLC*, No. 19-2410, 2021

WL 4206279, at *8-9 (6th Cir. Sept. 16, 2021) (performance reviews created

by supervisor that contained feedback from other employees were

admissible under business-record exception where "[b]oth the solicitation

of the feedback from [the] employees and the production of the

---

[7] Below, Covius suggested in passing that Richardson's reliance on information from Ostrander or Gerety may have introduced a hearsay-within-hearsay problem. 3-ER-313:2-3. That is incorrect. As other circuits have explained, "[i]f both the source and recorder of the information were acting in the regular course of the organization's business, … the hearsay upon hearsay problem may be excused by the business records exception to the rule against hearsay." *United States v. Turner*, 189 F.3d 712, 720 (8th Cir. 1999); *see also, e.g.*, *Bueno-Sierra*, 99 F.3d at 379 n.10 (double hearsay problem does not prevent admission of business record where "each link in the chain of possession … satisf[ies] the requirements of the business records exception or some other exception to the hearsay rule"). Furthermore, although Ostrander or Gerety relied on information from Diaz, Diaz also supplied that information as part of a regular practice, 4-ER-580:24-582:20, and in any event, her statements would be independently admissible as statements by an opposing party under Federal Rule of Evidence 801(d)(2). *See United States v. Ray*, 930 F.2d 1368, 1370 n.6 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23, 1991) (where opposing party supplied statements contained within business record, the "statements were party admissions and were therefore nonhearsay under Fed. R. Evid. 801(d)(2)").

performance reviews by the … supervisor were plainly conducted in the regular course of business").

That outcome is also sensible because business records often result from chains of communication. As one commentary explains: "Rule 803(6) permits the admission of records made through a coordinated process, where one employee perceives information and transmits the information to another who records it." 30B Wright & Miller's Fed. Prac. & Proc. § 6866 (2025 ed.). In that event, "[t]he initial observer must have knowledge of the event observed, but neither the ultimate recorder of the information nor those involved in passing that information along are required to have firsthand knowledge of the recorded event." *Id.*

The district court purported to derive the direct-personal-knowledge requirement from *In re Oil Spill by the Oil Rig Deepwater Horizon*, MDL No. 2179, 2012 WL 85447 (E.D. La. Jan. 11, 2012). In dicta, *Deepwater Horizon* suggested a "personal knowledge" requirement, and a handful of district courts have recited that standard in assessing emails under the business-record exception. But that unpublished, out-of-circuit district court decision does not bind this Court, and neither this Court nor any other circuit has ever cited it. And in any event, a direct-personal-knowledge

26

requirement is contrary to Rule 803(6)'s plain language for the reasons just discussed.

Because Richardson's interview-feedback email satisfied Rule 803(6)'s requirements, the email was admissible unless Covius could have proven that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E); *see also United States v. Castro*, 704 F. App'x 675, 677 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc* (Nov. 1, 2017) (opponent of hearsay evidence "did not meet his burden to show that the records are untrustworthy under Federal Rule[] of Evidence 803(6)"); *United States v. Smith*, 804 F.3d 724, 729 (5th Cir. 2015) ("[T]he burden of establishing that a piece of evidence lacks trustworthiness is on its opponent.").

The district court never assessed whether Covius met that burden, but Covius cannot do so on this record. To be sure, at trial Ostrander and Diaz did not recall making the statements Richardson attributed to them. But that is not enough to establish untrustworthiness. After all, "inaccuracies, ambiguities, or omissions go to the weight and not the admissibility of the evidence," and business records need only be "trustworthy for what they are" and "a party need not prove that business

27

records are accurate before they are admitted." *United States v. Scholl*, 166 F.3d 964, 978-79 (9th Cir. 1999), *as amended on denial of reh'g* (Mar. 17, 1999); *see also* 30B Wright & Miller's Fed. Prac. & Proc. § 6863 (2025 ed.) ("[T]he sufficiency of the foundation witness' knowledge centers on the witness' familiarity with the organization's record keeping practices, not any particular record. Thus, the witness need not be able to attest to the accuracy of a particular record or entry."). And, as discussed in greater detail below, *infra* Part I.B., the email bore numerous hallmarks of trustworthiness.

### 2. The interview-feedback email was admissible under the residual exception.

Federal Rule of Evidence 807 creates a residual or "catchall" hearsay exception. *See* Addendum at A-2. Under this exception, a hearsay statement that is not otherwise admissible may still be admitted if (1) "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement"; and (2) the statement "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid.

28

807(a); *see also In re Mbunda*, 604 F. App'x 552, 554 (9th Cir. 2015) (Rule 807 "allow[s] for the admission of *any* out-of-court statement, so long as the statement meets the residual rule's own articulated requirements." (emphasis added)). The proponent must give the opposing party "reasonable notice of the intent to offer the statement," which "must be provided in writing before the trial." Fed. R. Evid. 807(b).

Even if Richardson's interview-feedback email were not a business record, it was nonetheless admissible under the residual exception. Covius has not disputed that the EEOC gave sufficient notice of its intent to offer the email. Nor has Covius disputed that the email was more probative than any other evidence the EEOC could reasonably obtain, as the district court found. 1-ER-35. The only issue even arguably in dispute is whether the email bore sufficient "circumstantial guarantees of trustworthiness." *United States v. Sanchez-Lima*, 161 F.3d 545, 547 (9th Cir. 1998).

The answer is a resounding yes. As the district court itself initially reasoned, the email bore numerous hallmarks of trustworthiness: Richardson sent the email "soon after" receiving Covius's feedback, she made the email as part of a "regular practice," she did not make the email "in anticipation of litigation," the contents "were not self-serving," and

29

other evidence corroborated the email, including Smelko's notes remarking on Ebert's migraines and pain-management medication. 1-ER-34-35. Indeed, Smelko's handwritten notes identifying Ebert's "PAIN MGMT Med's." and "MIGRAINS," 2-ER-250, and his later confirmation that Ebert likely disclosed her conditions and medications in response to his questions about Covius's drug-testing requirement, 4-ER-709:25-710:7, align closely with Richardson's statement that Covius had expressed concerns about Ebert's "pain medication for [her] migraines" given the company's "pre screening process," 2-ER-252. It is difficult to imagine how Richardson might have invented, of her own accord, an explanation that so accurately described an interview at which she was not present.

Other facts bolster that finding of trustworthiness. For instance, Richardson relied on Covius's feedback in deciding whether a candidate might be a good fit for other employment opportunities, as evidenced by the fact that Richardson offered Ebert information about a different employer that "does not do a drug test for hire." 2-ER-252. That gave Richardson every incentive to include accurate information. *See Foster*, 711 F.2d at 883 (where person "had to rely on" records, "there would have been little reason … to distort or falsify them").

30

Richardson's account has also remained consistent over time. Richardson has always maintained that she received Covius's feedback from either Ostrander or Gerety: she offered that account in her initial witness interview with the EEOC in 2022, 2-ER-283, again in her deposition in October 2024, 2-ER-166:2-10, and yet again at trial in 2025, 3-ER-440:4-15, 451:14-15, 456:15-18, 469:23-470:25, 476:20-477:10.

For these reasons, the district court was correct when it initially determined that Richardson's email was admissible under the residual exception. 1-ER-33-35. In reversing that ruling mid-trial, the district court appeared to rely on two factual findings: first, that Richardson had "no idea" from whom she received Covius's interview feedback, 5-ER-1009:13-15, 1010:7-9, 1016:5-7, 1017:2-3, and second, that Richardson had all but admitted to making up the drug-test explanation to "soften the message" to Ebert, 5-ER-1009:15-17, 1017:3-5. Both findings are clearly erroneous and thus an abuse of discretion.

As to the first finding, Richardson consistently testified that she received Covius's feedback from Ostrander or Gerety. 3-ER-440:4-15, 451:14-15, 456:15-18, 469:23-470:25, 476:20-477:10; *see also* 2-ER-283; 2-ER-166:2-10. Although Richardson could not recall from *which* of these two

31

account managers she received the feedback, that is a far cry from the court's finding that she had "no idea" where she got the information. It also does not matter which account manager sent the feedback to Richardson: either scenario would have been consistent with Aerotek's regular practice for receiving and conveying that type of information, which means either scenario offers the same circumstantial guarantee of trustworthiness.

And in any event, other record evidence shows that the information likely came from Ostrander, filling in that detail in Richardson's account. Indeed, Ostrander and Diaz both generally confirmed that Ostrander would have been the intermediary between Covius and Richardson at the time of Ebert's interview, and contemporaneous documents confirm as much. 3-ER-508:23-509:2, 522:24-523:18, 553:16-18, 555:2-4; 4-ER-569:12-15, 620:12-14; *see also* 3-ER-512:25-513:6; 2-ER-226-27, 239-40, 246, 258-68, 278-80. The fact that Richardson was honest about the limitations of her memory does nothing to undermine the numerous circumstantial guarantees of trustworthiness canvassed above.

As to the second finding, Richardson *never* said or suggested that she fabricated Covius's rationale for not hiring Ebert. To the contrary,

32

Richardson expressly confirmed that she did not "manufacture" anything and clarified that she included in the email to Ebert only information she had received. 3-ER-479:21-23 ("Q Just on that last question, was it that you manufactured that statement or was that the statement you heard? A That was the statement I heard."). Richardson's veracity was entirely consistent with her apparent desire to "soften" the message for Ebert. Indeed, Richardson explained that in providing interview feedback to a candidate, she generally "highlight[ed] what went well in the interview," and what did not go well, so the candidate would have a better sense of their strengths for "their next job opportunity or interview process." 3-ER-456:22-457:9. In other words, Richardson sought to provide constructive criticism by *emphasizing* certain feedback, not manufacturing it. The district court's apparent finding that Richardson had admitted to lying simply overlooks that testimony.

### 3. There is no independent basis for excluding other exhibits that referenced the interview-feedback email or related testimony.

The district court also struck other exhibits that contained Richardson's interview-feedback email and testimony concerning it. 5-ER-1017:9-10; 1-ER-5-6; 2-ER-57. That ruling hinged entirely on the court's

exclusion of the email itself. The court provided no independent basis for excluding that evidence and none is apparent. Accordingly, if this Court were to reverse the district court's exclusion of the interview-feedback email, it should likewise reverse the district court's exclusion of this other evidence.

### B. Alternatively, the EEOC presented other circumstantial evidence from which a reasonable jury could infer disability discrimination.

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures" or "the hiring … of employees." 42 U.S.C. § 12112(a). To ultimately prevail on a claim of disability discrimination, the EEOC had to show that (1) Ebert had a disability, (2) Ebert was qualified for the position to which she applied, and (3) Covius refused to hire Ebert on the basis of her disability. *EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 922 (9th Cir. 2018).

In its oral motion to dismiss, Covius did not challenge the first or second elements. Instead, its motion and the district court's ruling turned entirely on the third element (i.e., causation).[8] 5-ER-1013:23-1014:11, 1017:1-

---

[8] More exactly, the district court found the EEOC could not establish "even a prima facie case" because there was "neither direct nor circumstantial

13; 2-ER-57. To prove that element, the EEOC had to show only that Ebert's fibromyalgia or migraines, or her use of pain-management medication to treat those conditions, were a but-for cause of Covius's decision not to hire Ebert.[9] *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (to

---

evidence" that Covius acted on the basis of disability. 5-ER-1017:1-9. Since Covius moved to dismiss after the EEOC's case-in-chief, it is unclear whether the prima facie case was still relevant or whether the court should have instead assessed the ultimate question of discrimination *vel non.* *Compare Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002) (en banc) (explaining that *McDonnell Douglas* framework "is not instructive" where party challenges sufficiency of evidence "in a motion for judgment as a matter of law made at the close of the evidence," but not addressing mid-trial motions), *aff'd*, 539 U.S. 90 (2003), *with Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1151 (D.C. Cir. 2004) (when district court grants judgment as a matter of law at close of a plaintiff's case-in-chief, the "precise question" is "whether [the plaintiff] provided a 'legally sufficient evidentiary basis for a reasonable jury to find' that she had established the elements of a prima facie case"). This Court need not resolve which question controls at this stage. Viewed through either analytical lens, the EEOC supplied evidence from which the jury reasonably could have found that Covius discriminated on the basis of disability. *See Opara v. Yellen*, 57 F.4th 709, 723-24 (9th Cir. 2023) ("Under any approach, generally, very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive." (citation modified)).

[9] In an earlier order denying summary judgment, the district court reasoned that the EEOC had to show Ebert's disability was *the* but-for cause of Covius's decision. 2-ER-133-35. That is incorrect. The Supreme Court has made clear that even when anti-discrimination laws require but-for causation, an employment action may still have "multiple but-for causes." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020); *see also Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1200 (11th Cir. 2024) (although the ADA

35

establish disability discrimination under ADA, plaintiff "must show that the adverse employment action would not have occurred but for the disability"); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001) ("For purposes of the ADA, with a few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination.").

Contrary to the district court's ruling, the record contains circumstantial evidence from which the jury could reasonably find that Covius failed to hire Ebert on the basis of her fibromyalgia or migraines, or on the basis of her use of pain-management medication to treat those conditions. As an initial matter, despite agreeing to interview Ebert the day after receiving her application, Covius then made the decision not to hire her almost immediately after she disclosed her conditions and medication. *See* 5-ER-942:18-943:12; 2-ER-241-43; 2-ER-101-02. Courts have long recognized that "proof of the close temporal proximity" between an

---

requires but-for causation, "there can be multiple but-for causes of an adverse employment action"). It is unclear whether the court applied the same causation standard in ruling on Covius's motion to dismiss at trial. If it did, that too was error.

employee's disclosure of a disability and an employer's adverse action may raise an inference of discrimination. *Kinney v. Emmis Operation Co.*, 291 F. App'x 789, 791 (9th Cir. 2007); *see also Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113-14 (8th Cir. 2001); *Dennis v. Fitzsimons*, 850 F. App'x 598, 602 (10th Cir. 2021).

Next, there is strong evidence that Smelko—the relevant decisionmaker, according to Covius—specifically considered *and found relevant* Ebert's conditions and medication in deciding whether to hire her. During the interview, Smelko wrote "MIGRAINS" and "PAIN MGMT Med's" on Ebert's resume, 2-ER-250, and he took notes only on "the things that jumped out at [him] as relevant," 4-ER-693:6-16; *see also* 4-ER-709:14-710:7. Smelko's understanding of Covius's drug-testing policy reveals why he thought Ebert's medications were relevant: Smelko believed Covius's drug-testing policy was "strict" and allowed "no exceptions." 4-ER-719:7-12.

Covius also hired for the same position two candidates, Gilbertson and Thayer, who did not (so far as the record reflects) have disabilities and had less education and relevant mortgage experience than Ebert. *Compare* 2-ER-249-51, *with* 2-ER-228, 231; *see also* 4-ER-637:14-638:3, 639:22-640:2,

37

641:5-9, 743:4-8, 744:2-6. A factfinder may infer discrimination where an employer hires or retains similarly situated individuals outside the plaintiff's protected class, *Martinez v. Astrue*, 256 F. App'x 75, 77 (9th Cir. 2007), especially where the selected or retained individuals' qualifications are equal or inferior to the plaintiff's, *see Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). And when Covius hired another candidate, Sharnetsky, for one of the two openings to which Ebert applied, it delayed Sharnetsky's start date until after she healed from hand surgery, suggesting that Covius did not want to hire individuals with active impairments. 3-ER-500:1-23; 4-ER-783:9-784:8; 2-ER-254-57. Like Gilbertson and Thayer, Sharnetsky did not share Ebert's level of education. 4-ER-755:11-24; 2-ER-229-30.

Finally, there is Covius's shifting explanations for declining to hire Ebert. At trial, Diaz outright admitted that Covius's initial explanation that she made the hiring decision was false, 4-ER-628:1-11, 633:11-21, and she contradicted or was unable to corroborate key aspects of Covius's explanations for not hiring Ebert. 4-ER-618:14-619:2 (Diaz gave Ebert passing score reflecting she was hirable); 4-ER-653:24-654:10 (Diaz did not rely on Aerotek's candidate summaries); 4-ER-671:17-672:11 (Diaz did not

38

believe she would have raised concerns that Ebert's migraines might affect her attendance). And while Covius now maintains that Smelko was the relevant decisionmaker, Smelko testified that he could not "remember the reason for [his] decision." 4-ER-711:7-9. Like Diaz, Smelko also contradicted Covius's initial account of Ebert's interview. *Compare* 4-ER-709:25-710:7 (Smelko assumed Ebert disclosed impairments and pain-management medication in response to his questions), *with* 2-ER-272 (Covius asserting that Ebert disclosed impairments and medication "without prompting or inquiry").

Given these inconsistencies, the jury reasonably could have disbelieved Covius's proffered explanations for refusing to hire Ebert. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." (emphasis omitted)); *see also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004) ("Proof that the defendant's explanation is unworthy of credence is [a] form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." (alteration in original) (quoting *Reeves*, 530 U.S. at 147)).

39

Considered together, the foregoing evidence would support a jury finding that Covius discriminated on the basis of disability. But the district court did not assess any of that evidence. Instead, it simply announced that no evidence showed that "Covius made a decision not to hire [Ebert] because of her … condition," citing Diaz's and Smelko's testimony that they "would not discriminate." 5-ER-1012:21-1013:3. But weighing witnesses' credibility "is a task for the jury, not the trial judge." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1286 n.9 (9th Cir. 2001). Even putting aside that problem, Diaz and Smelko did not appear to grasp that refusing to hire someone because of her legitimate use of prescription medication directly related to her disabilities could be discriminatory. *See* 4-ER-674:6-19, 739:16-741:10.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be vacated and the case should be remanded for further appropriate proceedings.

Respectfully submitted,

ANDREW B. ROGERS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

July 21, 2025

## ADDENDUM

**Federal Rule of Evidence 803(6)**

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

\*       \*       \*

(6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

A-1

**Federal Rule of Evidence 807**

(a) In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

(1) the statement is supported by sufficient guarantees of trustworthiness--after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

(b) Notice. The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement-- including its substance and the declarant's name--so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing--or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

A-2

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____ 25-2118 _____

I am the attorney or self-represented party.

**This brief contains** _____ **7,596** _____ **words,** including _____ 16 _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __/s Steven Winkelman_____ **Date** _____ July 21, 2025 _____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**          *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that on July 21, 2025, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the Appellate Case Management System (ACMS). I certify that all counsel of record are registered ACMS users, and service will be accomplished via ACMS.

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

July 21, 2025