No. 25-2118

# United States Court of Appeals for the Ninth Circuit

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant,*

– v. –

COVIUS SERVICES, LLC,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF WASHINGTON IN CASE NO. 2:23-CV-00186-TOR,
HONORABLE THOMAS O. RICE, DISTRICT JUDGE

## BRIEF FOR DEFENDANT-APPELLEE COVIUS SERVICES, LLC

PHILIP A. TALMADGE
TALMADGE/FITZPATRICK
2775 Harbor Avenue SW
Suite C, Third Floor
Seattle, Washington 98126
(206) 574-6661
phil@tal-fitzlaw.com

SUZANNE K. MICHAEL
JEREMY F. WOOD
FISHER & PHILLIPS
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
(206) 682-2308
smichael@fisherphillips.com
jwood@fisherphillips.com

*Attorneys for Defendant-Appellee Covius Services, LLC*

CP COUNSEL PRESS    (800) 4-APPEAL • (714976)

## CORPORATE DISCLOSURE STATEMENT

Under Fed. R. of App. P. 26.1, appellee Covius Services, LLC, a Delaware corporation, hereby discloses that Rithm Capital, a publicly traded company, owns 10% or more of its stock.

DATED this 29th day of December, 2025.

/s/ Philip A. Talmadge
Philip A. Talmadge, WSBA #6973
Talmadge/Fitzpatrick
2775 Harbor Avenue SW
Third Floor, Suite C
Seattle, WA 98126
(206) 574-6661

Suzanne K. Michael, WSBA #14072
Jeremy F. Wood, WSBA #51803
Fisher Phillips LLP
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
(206) 682-2308

i

TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ..................................................................... iii

A.    STATEMENT OF JURISDICTION ..............................................1

B.    INTRODUCTION .........................................................................1

C.    ISSUES PRESENTED FOR REVIEW ..........................................2

D.    STATEMENT OF THE CASE ......................................................2

E.    SUMMARY OF ARGUMENT......................................................15

F.    ARGUMENT.................................................................................17

      (1)    Standard of Review ..........................................................17

             (a)    Rule 50(a)................................................................17

             (b)    Exhibit 37 ...............................................................18

      (2)    Elements of an ADA Title I Claim ..................................22

      (3)    The EEOC's Principal Evidence of "Discrimination" by
             Covius Was Inadmissible Hearsay....................................24

             (a)    FRE 803(6)..............................................................25

             (b)    FRE 807(1)..............................................................28

      (4)    EEOC's Argument that Circumstantial Evidence Supported
             Its Title I Claim Is Baseless.............................................31

G.    CONCLUSION.............................................................................32

## TABLE OF AUTHORITIES

Page(s)

Cases:

*Akrabawi v. Carnes Co.*,
152 F.3d 688 (7th Cir. 1998) .................................................................................29

*City of Emeryville v. Robinson*,
621 F.3d 1251 (9th Cir. 2010) ...............................................................................31

*Crawford v. Washington*,
541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) ....................................24

*Enright v. Solar Turbines Inc.*,
46 F. App'x 548 (9th Cir. 2002) .............................................................................23

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009) ...............................................................................................23

*Haydar v. Amazon Corp.*,
2021 WL 4206279 (6th Cir. 2021) .........................................................................26

*Hudson v. MCI Telecommunications Corp.*,
87 F.3d 1167 (10th Cir. 1996) .................................................................................9

*Idaho v. Wright*,
497 U.S. 805, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990) ...................................30

*In re Mbunda*,
604 F. App'x 552 (9th Cir. 2015) ...........................................................................30

*In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on
Apr. 20, 2010*,
2012 WL 85447 .......................................................................................................13

*Kannan v. Apple, Inc.*,
2022 WL 3973918 (9th Cir. 2022) .........................................................................23

*Mays v. United Ass'ns Loc. 290 Apprenticeship & Journeymen Training Tr. Fund*,
407 F. Supp. 3d 1121 (D. Or. 2019) ......................................................................26

*Murray v. Mayo Clinic*,
934 F.3d 1101 (9th Cir. 2019) ...............................................................................23

*Nasiri v. T.A.G. Security Prot. Servs., Inc.*,
2023 WL 4449197 (9th Cir. 2023) .........................................................................18

*Oki America, Inc. v. Microtech Int'l Inc.*,
872 F.2d 312 (9th Cir. 1989) ...................................................................19

*Pfingston v. Ronan Engineering Co.*,
284 F.3d 999 (9th Cir. 2002) ...................................................................19

*Rivers v. United States*,
777 F.3d 1306 (11th Cir. 2015) ................................................................30

*S.E.C. v. First City Fin. Corp.*,
890 F.2d 1215 (D.C. Cir. 1989) ...............................................................29

*Summers v. Delta Air Lines, Inc.*,
508 F.3d 923 (9th Cir. 2007) ............................................................. 17-18

*Thomas v. Bronco Oilfield Servs.*,
503 F. Supp. 3d 276 (W.D. Pa. 2020) .....................................................26

*United States v. Angulo*,
4 F.3d 843 (9th Cir. 1993) .......................................................................22

*United States v. Castro*,
704 F. App'x 675 (9th Cir. 2017)...................................................... 18, 19

*United States v. Huber*,
772 F.2d 585 (9th Cir. 1985) ...................................................................20

*United States v. Kim*,
595 F.2d 755 (D.C. Cir. 1979)..................................................................29

*United States v. Lischewski*,
860 F. App'x 512 (9th Cir. 2021)..............................................................20

*United States v. Mathis*,
559 F.2d 294 (5th Cir. 1977) .............................................................. 29-30

*United States v. Morales*,
720 F.3d 1194 (9th Cir. 2013) ..................................................................21

*United States v. Phillips*,
219 F.3d 404 (5th Cir. 2000) ........................................................ 21-22, 30

*United States v. Sanchez-Lima*,
161 F.3d 545 (9th Cir. 1998) .............................................................. 22, 29

*United States v. Scholl*,
166 F.3d 964 (9th Cir. 1999) ...................................................................27

iv

*United States v. Smith,*
804 F.3d 724 (5th Cir. 2015) ................................................................. 18, 19

*United States v. Town of Colo. City,*
935 F.3d 804 (9th Cir. 2019) ................................................................. 20, 21

*United States v. Walker,*
410 F.3d 754 (9th Cir. 2005) ........................................................................20

*United States v. Washington,*
106 F.3d 983 (D.C. Cir. 1997)......................................................................29

*Velasquez v. City of Long Beach,*
793 F.3d 1010 (9th Cir. 2015) ......................................................................20

Statutes & Other Authorities:

28 U.S.C. § 1291 ..............................................................................................1

28 U.S.C. § 1331 ..............................................................................................1

42 U.S.C. § 12101 ............................................................................................1

42 U.S.C. § 12112(a) ......................................................................................23

29 C.F.R. 1630.2(j)(1)(ii) ...............................................................................23

Fed. R. App. P. 4(a)(1)(B) ...............................................................................1

Fed. R. Civ. P. 50(a)................................................................... *passim*

Fed. R. Evid. 801 ...........................................................................................21

Fed. R. Evid. 801(d)(2)(E) .............................................................................21

Fed. R. Evid. 803 ..................................................................................... 29, 30

Fed. R. Evid. 803(6)................................................................................ *passim*

Fed. R. Evid. 804 ..................................................................................... 29, 30

Fed. R. Evid. 807 ................................................................................... *passim*

Fed. R. Evid. 807(1)................................................................................. 24, 28

Fed. R. Evid. 902(11)......................................................................................25

Fed. R. Evid. 902(12)......................................................................................25

Ninth Circuit Model Rule 12.1 ......................................................................23

v

*Use of Codeine, Oxycodone, and Other Opioids:*
   *Information for Employees* (2020) ........................................................................23

A.    STATEMENT OF JURISDICTION

The parties agree that the district court had jurisdiction as this case involving a federal question. 28 U.S.C. § 1331. The district court granted a Rule 50(a) motion to dismiss on January 24, 2025. 1-ER-3. A judgment dismissing appellant Equal Employment Opportunity Commission's ("EEOC") action was entered on January 28, 2025. 1-ER-2. On March 28, 2025, the EEOC filed its notice of appeal seeking review of the district court dismissal order. 2-ER-286–88. That notice of appeal was timely. Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

B.    INTRODUCTION

The EEOC's opening brief plays fast and loose with the facts and law in this case arising under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq.

The EEOC brought this case on behalf of Kelli Ebert, who claims a disability based on her alleged migraine headaches and fibromyalgia that she says she treated with Oxycodone. She asserted that Covius Services, LLC ("Covius"), a firm that performs various financial services, discriminated against her for her alleged disability when it declined to employ her for the position of a non-escrow tax specialist.

However, at trial, the EEOC never proved the alleged discrimination, and the

1

district court properly excluded the principal basis for the alleged discrimination – one email from a junior recruiter with the recruiting firm, Aerotek, to Ebert that purported to characterize Ebert's employment interview with Covius, and the reason why she was not hired. The district court excluded this email after its author, Aerotek's junior recruiter, largely recanted its contents at trial.

In fact, Covius had many non-discriminatory reasons to not hire Ebert. Ebert's resume was contradictory on its face, Ebert had little to no relevant experience for the job. Ebert's interview was less than sterling as one interviewer rated her 3.75 out of 10 (a failing grade), and the other a 5 out of 10 (barely passing). Evidencing the lack of discriminatory intent, Covius actually hired a better qualified person for the job who had a disability that required accommodation.

The district court did not abuse its wide discretion in excluding the Aerotek email and properly dismissed the EEOC's Title I action under Rule 50(a) for lack of proof. This Court should affirm the district court's judgment of dismissal.

C.    ISSUES PRESENTED FOR REVIEW

Covius acknowledges the issues presented by the EEOC for this Court's review.

D.    STATEMENT OF THE CASE

Covius has longstanding company policies barring disability discrimination. Its employee handbook protects disabled workers, forbidding disability

discrimination and setting forth processes by which employees can request accommodations; 1-SER-91–92, 96–99.[1] That handbook also acknowledges that employees would not be in violation of Covius's drug-free workplace policy if they were merely using prescription drugs. *Id.* at 113–14.

In 2019, Covius acquired a company called Chronos Solutions ("Chronos") in Spokane Valley; Chronos became a wholly-owned subsidary of Covius and operated a tax solutions business to support the payment of property taxes for financial institution clients. 4-ER-726, 810. In integrating Chronos, Covius required its employees to undergo Covius's own onboarding process. 4-ER-810. As a result, Covius explained how Covius handled that onboarding, including its drug screening process administered by third party vendor Hire Right. 4-ER-824–26. Covius required drug screening based on its various contracts with the federal government. 5-ER-892. Hire Right's drug screens had several layers of control, during which review officers could determine if positive test results have legitimate explanations. 4-ER-826. For example, if an applicant tested positive for opiates as a result of prescription medication, Hire Right's medical review officer would review the prescription provided by the applicant and change the result from "positive" to

---

[1] Covius is citing to an exhibit here in order to provide the Court necessary context information for the case. The district court was fully aware of this information from Covius's trial brief, the exhibit lists, 2-ER-58–62, 1-SER-15–16, and the pretrial order. 2-ER-112.

"negative" prior to sending the result to Covius. 4-ER-826.

In 2020, the Chronos's tax business within Covius sought to hire a non-escrow tax specialist. 4-ER-578. This job required significant use of computers. 1-SER-19–29. The work of the non-escrow tax specialist was almost entirely computer-based and required complex online research and data entry. *Id*.

Kelli Ebert had moved with her wife to Spokane from the Seattle area in 2019, allegedly to live closer to her in-laws. 5-ER-915. They were living with the sister, brother-in-law, and their kids in the Spokane area by early 2020. 5-ER-960. Ebert began to look for a job, and contacted a recruiting company, Aerotek, to help her find employment. 5-ER-933. By 2020, she was working primarily with newly-hired Aerotek recruiter, Haleigh Richardson.[2] 5-ER-934–35. Richardson's work as an entry level recruiter for Aerotek in 2020 was her first position after she graduated from college. 3-ER-449–50.

Covius contacted third-party Aerotek to provide temporary workers to its Chronos tax department, including in Spokane Valley. 2-ER-182–83. Aerotek was always an independent recruiting agency over which Covius exercised no operational control. 4-ER-595. Aerotek helped Covius obtain source candidates for the non-escrow tax specialist role in Spokane in 2020. 3-ER-551. Aerotek knew that Covius required a pre-employment drug screen. 2-ER-165. Aerotek's process, as far

---

[2] Richardson recently married, changing her name from Dobson.

as Covius understood it, was to refer candidates to Covius, schedule their interviews, receive feedback and any decision from the hiring managers, and then communicate the same to a candidate. 4-ER-569–70, 622–23.

Thus, in early March, Richardson suggested certain possible jobs to Ebert, including the non-escrow tax specialist position at Covius. 3-ER-461. Ebert agreed to apply, so Richardson took the resume that Aerotek had "prepared" based on information from Ebert, 1-SER-69–70, and sent it to Covius in Spokane. 3-ER-347.

Covius agreed to interview Ebert without any reservations about Ebert's medications. The tax department manager, Alan Smelko, and supervisor Andrea Diaz, his principal associate, conducted the interview. 4-ER-661–62, 700–01. Smelko was traveling a great deal in this time period on Covius business; he had to travel to South Carolina weekly. 4-ER-678, 701. Smelko was out of town when Ebert applied, so Diaz scheduled the interview. 4-ER-701. Upon receiving the resume, Diaz thought Ebert's resume met the "bare minimum" of the qualifications Covius needed and she suggested to Aerotek's Richardson that Ebert come in to be interviewed the afternoon of March 6, 2020, as Smelko was coming back from the East Coast and would be in the office in the afternoon and could participate in the interview. 4-ER-594–95.

Ebert agreed, and showed up in Covius's office for the interview. 4-ER-701. Smelko had just arrived and did not know there was a scheduled interview, but he

5

interviewed many people and had a "model" he followed. *Id.*

During her interview, Ebert presented Diaz and Smelko with her own version of her resume that significantly differed from what Aerotek had previously provided to Covius. 1-SER-71–74. This new resume deleted inaccuracies like Ebert's alleged past work experience in New York. That resume set out Ebert's limited experience. She had last worked, according to her resume, in October 2019, as an assistant manager at a Spirit Halloween store, and even then only for two months. *Id.* Before that, she had worked a single month as a customer service representative for Faneuil. *Id.* Her resume showed a series of recent jobs that Ebert held for no more than a few months each. *Id.* None of the experience on Ebert's resume was relevant to the non-escrow tax specialist role that Covius needed. *Id.* Diaz asked Ebert to rate her Microsoft Excel skills from one to ten. Excel use was crucial to the role and its data-entry duties. Ebert rated herself a five. 2-ER-250 (Ebert's self-rating is in the upper right corner); 4-ER-615–16.

From Ebert's point of view, things went well and she thought she had the job; she expressed excitement in possibly finally having a job after all of her unsuccessful attempts with other potential employers. 5-ER-948.

But from Covius's point of view, there were *numerous* "red flags." Ebert's resume that Aerotek had sent to Covius had a number of errors on it. 2-ER-237. It asserted that she had worked in different cities, like New York City, but Ebert denied

6

she had ever been to New York. 4-ER-662–63. It was also inconsistent with the actual resume that Ebert brought with her to the interview, a point concerning to both Smelko and Diaz. 2-ER-277. It appeared to Diaz that Ebert was not good with attention to detail, at best, and dishonest, at worst. 2-ER-277; 4-ER-734.[3] Smelko also testified that in his opinion, Ebert lacked the bare minimum of qualifications for the job, a fact the EEOC totally omits from its brief. 4-ER-721–32. Smelko rated Ebert a 3.75 (out of 10) and Diaz rated her a 5. 4-ER-618–19. A 3.75 was a failing mark and would not garner a candidate a job offer; Smelko was a "no" and Diaz was barely a "possible."[4] After the interview, Smelko did not think Diaz should have ever agreed to interview Ebert, or that Aerotek should have even referred her to Covius in the first place. She lacked relevant experience, her resume shows little professional commitment, and she had admitted her skills in Excel were lackluster. 4-ER-731–32. Covius did not make a job offer to Ebert. 4-ER-730–31.

One of the things Smelko would always mention to candidates as part of any

---

[3] The EEOC's characterization of Ebert's problematic resumes as a "minor hiccup," br. of appellant ("BA") at 6, is belied by the belief of the Covius professionals responsible for hiring staff. As Diaz stated: "Because of these inconsistencies, I was concerned about Ms. Ebert's attention to detail and ability to evaluate and process sensitive financial information, which is essential in the Non-Escrow Tax specialist position." 2-ER-277.

[4] When the EEOC repeatedly claims that Ebert "passed" the interview, *e.g.*, BA 12 ("Diaz gave Ebert a passing score…"), it is not fully candid with the Court about her actual evaluation by Smelko/Diaz.

7

interview was that Covius required a drug test of candidates by a third-party company if they accepted a job offer, and he asked each candidate if that would be a problem for them. 4-ER-692. Ebert apparently mentioned that she takes oxycodone and other drugs for migraine headaches, and Smelko noted these on his copy of her resume, where he wrote "Migrains" and "Pain Mgmnt Med" along with a few other things not pertinent. 4-ER-709–10.[5] Smelko testified he wrote those at the top because Ebert must have mentioned them during her interview, and he wrote them so that if she was hired, it would remind him that she might need accommodation. 4-ER-724. He testified that Covius has many employees who need accommodation, including for migraines, and Covius regularly provides those accommodations. 4-ER-724.[6] Neither Ebert or Diaz remembered any discussion about the medications

---

[5] The EEOC's present reference to fibromyalgia as a basis for her alleged disability seemingly was not mentioned in the interview.

[6] Demonstrating that Covius accommodated employees, Covius ultimately hired Rosalee Sharnetsky for the job for non-escrow tax specialist instead. 4-ER-583, 658. Sharnetsky was also referred by Aerotek. Sharnetsky disclosed that she suffered from a condition called Depuytren's contracture, that requires frequent hand surgery and physical therapy. 4-ER-761–64. Obviously, this might interfere with her use of a computer keyboard. Nonetheless, Covius hired and accommodated her. They hired her because Sharnetsky's resume far surpassed Ebert's. 2-ER-229–30. She had three years of experience processing escrow disbursements for American Title. *Id.* She had an accounting certificate, unlike Ebert. *Id.* She also rated herself a six in Excel, contrasted with Ebert's five. *Id.* And her work experience showed commitment to long-term positions. *Id.*

The EEOC argues that Covius actually discriminated against Sharnetsky by accommodating her need for a later start date. BA 13. That assertion is baseless.

8

Ebert took. 4-ER-616.

After the interview, Diaz called Aerotek's recruiter supervisor, Brittany Ostrander, and told her that Covius would not hire Ebert. 4-ER-704. Neither Diaz nor Ostrander remembered what else was said in that conversation, but Diaz did not tell Ostrander that Ebert's use of prescribed pain medication was disqualifying. 3-ER-526; 4-ER-667.

Richardson, Aerotek's recruiter, contacted Ebert on March 11 (six days after the interview) and left a voicemail to call her; she also sent Ebert an email that stated:

> I left you a message yesterday but wanted to follow up with you in regards to the position with Covius. They thought you had great experience and were capable of completing the role, especially with your mortgage knowledge from previous roles. Unfortunately, they have their own prescreening process after extending an offer. You had mentioned you are on pain medication for your migraines which they were completely understanding about, but their prescreening process does not allow for pain medication as you would be working with finances. They would be interested in meeting with you again if everything were to get better! With that being said, we do have a company that also fits your background. This company does not do a drug test for hire, just a background check. Please see below for more information.

Ex. 37; 2-ER-252.

This was not true at all. A third-party company administered the drug tests,

---

While perhaps obvious, "a reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation." *Hudson v. MCI Telecommunications Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996). Covius hired her, despite her *recurring* hand problem.

9

and if there was a prescription for the drugs at issue, the applicant would pass. 4-ER-825–26. Both Diaz and Smelko testified that Ebert's prescription medications were not an issue, that they never discussed them, and that prescription medications played no role in the decision not to hire her. 3-ER-526; 4-ER-667, 724. The *only* evidence in the case that allowed it to go forward was Aerotek recruiter Richardson's email to Ebert that "they decided because you take prescription pain meds they won't hire you."

Not only was that statement not true when made, but Richardson at trial could not even remember who gave her that information, or if what she wrote was accurate. At trial, Richardson testified that she "thought" one of two or three people at Aerotek gave her the information she put in the email about pain medications. 3-ER-421, 440. She "thought" it was either Madelyn Gerety or Brittany Ostrander, Aerotek's recruiting managers or maybe a third person,[7] but Richardson could not remember that third person or which of three actually gave her the alleged feedback on Ebert's Covius interview. 3-ER-470. The EEOC seemingly concedes that no such third person existed. BA 9 n.5. On cross-examination, Richardson fell apart, admitting she didn't really know where (or even if) Aerotek got the information; she didn't know who at Aerotek had told it to her, or if she correctly understood the information they told her. 3-ER-478–79. Most importantly, she admitted that she might have

---

[7] Gerety and the phantom third person did not testify at trial.

made up the story to "soften the message" to Ebert. 3-ER-479.

Ostrander, who supervised Richardson, testified that she did not recall telling Richardson anything about prescription medications, and that she believed she was never told by Covius that prescription medications were a reason for any employment decision. 3-ER-514. She said that if something like that would ever have been told to her, she believed she would have recognized that as improper and brought in Aerotek's HR to help, 3-ER-518–19, and that did not happen. She also said that she did not believe Diaz or Smelko would ever have said such a thing as both are "lovely people" from whom she had never heard anything discriminatory. 3-ER-496.

Diaz denied ever telling anyone at Aerotek (or anyone else) that she or Smelko ever said anything about pain medications being a concern or any issue at all in Ebert's case. 4-ER-620. She denied telling Ostrander or Gerety or anyone that pain medications were a problem for the drug test or a reason not to hire. *Id*. Smelko testified similarly. 4-ER-728–29. Although he usually was not the person that would interface with Aerotek about whether they were making a candidate an offer, he was very clear that under no circumstances would he tolerate anyone making or doing discriminatory things like that. 4-ER-729. Ostrander herself testified likewise. 3-ER-514.

The EEOC brought an action in the United States District Court for the

11

Eastern District of Washington alleging a violation of ADA's Title I by Covius in its decision not to hire Ebert. 2-ER-210. The case was assigned to the Honorable Thomas O. Rice, an experienced district court judge.

Before trial, the parties filed motions *in limine* and objections to their respective witnesses and exhibits. 2-ER-142, 189. The court heard argument on these motions on January 8, 2025. 1-ER-18. Pertinent to this appeal, the court ruled on the admissibility of exhibit 37, Aerotek recruiter Richardson's email to Ebert, and other exhibits that contained references to Richardson's email to Ebert. The EEOC itself contended that exhibit 37 was vital to its case as the court noted: "'Ebert cannot adequately explain how her candidacy for the Covius position ended' without the email which is the very issue disputed in this case." 1-ER-30. The court rejected the EEOC's argument that the exhibit was admissible for purposes other than the truth of the matter asserted in it. 1-ER-30–31.

Specifically, as to the EEOC's argument that the exhibit fell within the business record exemption to hearsay under Fed. R. Evid. ("FRE") 803(6), the court noted Richardson's lack of personal knowledge of the email's purported contents, and denied its admission under that exemption. 1-ER-33. Essentially, the court concluded that the record lacked trustworthiness:

> In applying the *Deepwater Horizon* framework, the Court's problem here is Dobson [Richardson] did not have personal knowledge of the events in the email. Plaintiff asserts that Dobson had knowledge of Ms. Ebert's rejection from Ostrander who had personal knowledge

12

of the rejection from a conversation with Diaz, thereby meeting the knowledge requirement. However, Dobson did not communicate with Diaz directly to learn of the rejection, therefore, she did not have personal knowledge. *See In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on Apr. 20, 2010,* 2012 WL 85447, at *3 ("[T]he inquiry [is] whether the declarant—the composer of the email—possessed personal knowledge of the information in the email."). Therefore, the Court does not find the email admissible under the business records exception.

*Id.*

The court, however, allowed exhibit 37's admission under FRE 807's "residual exception" to the hearsay prohibition, principally because Ostrander and Diaz would allegedly testify at trial about the facts in the email, and could potentially provide a factual basis for its reliability. 1-ER-34. At trial, however, neither Ostrander nor Diaz verified the "facts" alleged in the email and Richardson herself denied any knowledge of where she got those "facts," and even acknowledged she may have made them up to "soften the blow" to Ebert, her client.

Richardson admitted that she had not sent the email shortly after communicating with Ostrander but several days later, and longer than was the accepted practice. 3-ER-421. Richardson admitted that she did not even know if Ostrander gave her this information, as opposed to someone else that she could not identify. *Id*. When asked directly, she admitted that she may have misheard or misremembered. 3-ER-454. And when asked if she may have simply lied:

> Q Sure. Is it possible that the reason you put in the email to Kelli Ebert that they weren't going to hire her because she took pain medication for

13

issues, is it possible that the reason you did that is because you didn't think that would be an issue and you were trying to soften the message to her so she wouldn't lose confidence?

A Correct.

3-ER-479.

Ostrander could not offer much more:

Q And the email, the March 6th email that was sent by Haleigh Dobson Richardson that supposedly tells Kelli Ebert about Covius's feedback, do you know if you're the one that told any of this information to Ms. Dobson Richardson?

A I don't recall.

3-ER-514.

After the EEOC rested its case, Covius renewed its motion to exclude the Richardson email and dismiss. 5-ER-1008, 1013. With the jury having been excused for a break after the EEOC rested, the district court heard argument on the renewed motion to exclude the Richardson email. Covius also moved for a directed verdict. 5-ER-1013–14. The district court, now armed with the actual sworn in-court testimony, observed that the trial testimony undercut the trustworthiness of the testimony:

Well, my concern is that I – I honestly thought the live witnesses would be able to verify the information in the email, and they didn't. Haleigh Richardson has no idea where she got this information and that she put it in there. And she testifies – or she was asked whether she put that in there to soften the message to Kelli Ebert and she said, "Correct."

1-ER-9. It determined that exhibit 37 lacked any indicia of reliability when its author

14

had no idea where she obtained its contents:

> THE COURT: This is neither direct nor circumstantial evidence. This is a leap in faith because Haleigh Richardson has no idea where she got that information. And on cross-examination, she said she put it in there to soften the blow to Ms. Ebert, and therefore –
>
> MR. BLACKMAN: Can we use the rough transcript on the record, Your Honor?
>
> THE COURT: – you have not established even a prima facie case of ADA violation. Therefore, I am striking Exhibit 37 and all other exhibits that contain that email.

5-ER-1017. The court then determined that the EEOC failed to establish a *prima facie* claim:

> I don't see any evidence in front of me that Covius made a decision not to hire her because of her physical, mental, or medical condition.

1-ER-12. The court granted the motion for directed verdict, entering judgment accordingly. 1-ER-2–6.

## E.     SUMMARY OF ARGUMENT

The EEOC failed to prove a case of Title I ADA discrimination against Covius in connection with its decision not to hire Kelli Ebert. Covius did not decline to hire Ebert because of any alleged disability. Rather, Ebert did not perform well in her interview with Covius staff; she had two inconsistent resumes that Covius attributed to her lack of candor or a lack of attention to detail; only one of the two interviewers gave her a passing mark, and that mark was barely passing; the other interviewer gave her a failing mark. Critically,  Ebert's two inconsistent resumes raised serious

15

red flags with Covius as to whether the information she provided was accurate. Ebert was minimally qualified for the position she sought and other candidates were more qualified.

As for Ebert's alleged disability, migraines and fibromyalgia that required her use of oxycodone, the interviewers vigorously denied that any of those facts bore on their decision not to hire her. Covius had strong policies prohibiting discrimination. Aerotek's recruiting manager, Brittany Ostrander, indicated that the Covius interviewers were "lovely people" who did not discriminate. And no one at Aerotek ever discussed any alleged discriminatory statements with its HR group, which it would have had to do if it believed an employer was not hiring a candidate for a discriminatory reason. Finally, Covius hired a person with a serious hand disability for the position Ebert sought, reinforcing the absence of discriminating intent.

The central evidence of alleged discrimination by Covius was an email sent by a junior Aerotek recruiter, Haleigh Richardson, to Ebert about the interview. Richardson did not attend the interview, and she could not identify the source of the information conveyed in it. She could not even verify its reliability. She admitted that she may have made up the statements to soften the blow of Ebert not being hired. The district court did not abuse its discretion in determining that the email was not an FRE 803(6) business record making it admissible despite its obvious hearsay nature. The hearsay information in exhibit 37 was far from trustworthy.

16

The district court initially allowed the exhibit's admission under FRE 807 because Ostrander and Diaz would allegedly testify at trial to confirm that the alleged discriminatory statements as to Ebert would be rendered trustworthy. But the district court did not abuse its discretion in changing its mind when those witnesses at trial denied the content of the email, as Richardson herself did on cross-examination, particularly in light of her admission that the statements essentially may have been made up. The district court did not abuse its discretion in concluding that trial testimony rendered the hearsay information in exhibit 37 untrustworthy.

The district court did not err in granting the Rule 50(a) motion to dismiss where the EEOC failed to offer credible evidence that Ebert was not hired but for her alleged disability.

F.      ARGUMENT

 (1) <u>Standard of Review</u>

  (a) <u>Rule 50(a)</u>

The EEOC discusses the standard of review pertinent to the district court's evidentiary rulings and its Fed. R. Civ. P. ("FRCP") 50(a) motion to dismiss at length in its brief.  BA 17-19.  Rule 50(a) permits a district court to remove issues or even an entire case from the jury when there is no legally sufficient evidentiary basis to support a party's proposed outcome. *Summers v. Delta Air Lines, Inc.*, 508 F.3d

17

923, 926 (9th Cir. 2007).[8]  That decision is reviewed *de novo*.  The EEOC had presented its case and rested.  It was fully heard on the admission of exhibit 37 pre-trial and during argument at trial on the dismissal of the case.  The district court did not err in granting a dismissal order under FRCP 50(a).

> (b)  Exhibit 37

Central to this dispute is the admissibility of the Richardson email, ex. 37, and other exhibits in which that email is referenced.  The EEOC is too glib in discussing the standard of review of the district court's evidentiary decisions in its desperate effort to salvage the admissibility of what it knew was essentially its only allegedly viable piece of evidence of Covius's alleged discrimination as to Ebert. The EEOC tries to avoid its burden of proof on admissibility as well as the abuse of discretion standard of review when it cannot legitimately do so.

The EEOC even contends that Covius bore the burden of proving the inapplicability of the exception to hearsay that the EEOC seeks.  BA 27.  It cites an unpublished decision of this Court, *United States v. Castro*, 704 F. App'x 675 (9th Cir. 2017), and a Fifth Circuit case, *United States v. Smith*, 804 F.3d 724 (5th Cir. 2015) for this novel proposition.  Overall, the burden of proving that evidence is admissible falls on the party seeking its admission, here, the EEOC as to exhibit 37.

---

[8] A district court may even raise dismissal *sua sponte*.  *Nasiri v. T.A.G. Security Prot. Servs., Inc.*, 2023 WL 4449197 (9th Cir. 2023) at *1.

*Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1004 (9th Cir. 2002) (party seeking admission of statements bore "the burden of admissibility."); *Oki America, Inc. v. Microtech Int'l Inc.*, 872 F.2d 312, 314 (9th Cir. 1989).

With regard to the cases the EEOC cites, both are readily distinguishable. The *Smith* court confirms that the standard of review for an FRE 803(6) case is an abuse of discretion by the trial court; a district court must evidence an erroneous view of the law or a clearly erroneous assessment of the evidence to abuse its wide discretion. 804 F.3d at 729. The Court did not discuss an evidence proponent's initial burden on admissibility, as do the cases above. However, in attributing the burden on trustworthiness to the opponent of the evidence, the Fifth Circuit noted the "great latitude" afforded district courts on that question. *Id.*

This Court's unpublished decision in *Castro* only discussed an opponent's burden as to trustworthiness in a few lines, devoid of any actual analysis.

The EEOC does not purport to reconcile this Court's line of case imposing the burden on it to establish the admissibility of exhibit 37, evidence it proffers, with the burden on proving the exceptional circumstances that justify the admission of a document with multiple levels of hearsay.

That having been said, the question boils down here to whether the district court abused its wide discretion in concluding that exhibit 37's clear-cut hearsay statements were so tainted by lack of trustworthiness, as proven at trial, to justify its

19

exclusion. It did not.

As this Court is aware, the well-established, overarching rule is that district court evidentiary rulings are entrusted to the discretion of trial judges who are closer to the facts, pretrial and at trial; such decisions are reviewed by this Court for abuse of that wide discretion. *Velasquez v. City of Long Beach*, 793 F.3d 1010, 1017 (9th Cir. 2015); *United States v. Walker*, 410 F.3d 754, 757 (9th Cir. 2005). At that, not only must the district court abuse its discretion, any such abuse must be prejudicial. *Id.* That overarching principle does not disappear merely because the case involves a hearsay exception, as EEOC seems to suggest.

The EEOC wants to persuade this Court that a *de novo* standard of review applies to evidentiary decisions regarding hearsay exceptions, but the EEOC's asserted claim of *de novo* review of decisions on exceptions to hearsay does not appear to have applied in other cases involving exceptions to hearsay. In *Walker*, *supra*, an FRE 807 case, this Court simply applied an abuse of discretion standard of review in rejecting the application of FRE 807. Similarly, an abuse of discretion standard of review is applied in cases involving the business records exception. *United States v. Huber*. 772 F.2d 585, 591 (9th Cir. 1985); *United States v. Lischewski*, 860 F. App'x 512, 515-16 (9th Cir. 2021).

Even the cases cited by the EEOC on the standard of review do not support its position. In *United States v. Town of Colo. City*, 935 F.3d 804 (9th Cir. 2019),

BA 18, a case involving the FRE 801(d)(2)(E) co-conspirator hearsay exception, this Court held that it reviews *de novo* the district "court's interpretation of the hearsay rule, but review[s] the court's admission of evidence for abuse of discretion." *Id*. at 807 (citing *United States v. Morales*, 720 F.3d 1194, 1199 (9th Cir. 2013)). In *Morales*, a case involving the FRE 803(6) business record hearsay exception, the Court concluded the district court abused its discretion in admitting statements in Border Patrol reports as a business record. The Court stated that Confrontation Clause violations and construction of hearsay rules are reviewed *de novo*, but admission of evidence pursuant to a hearsay exception were reviewed for an abuse of discretion. *Id*. at 1199.

When cases like *Town of Colo. City* speak of *de novo* review of a district court's interpretation of a hearsay rule, they mean that this Court considers whether the district court applied the correct legal standard regarding the rule. If it did, the court's application of the hearsay exception is then reviewed for an abuse of discretion. As noted *infra*, the district court here fully understood and applied the correct legal standard in addressing the hearsay exceptions at issue.

Drilling down, the EEOC is less than candid with the Court regarding the rules at issue here. Both are, in fact, *exceptions* to the principle that hearsay is inadmissible. FRE 801. FRE 807 is a hearsay exception to be applied *only rarely, and in exceptional cases*. As such, EEOC bore a heavy burden on review. *United*

21

*States v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000) (We "will not disturb the district court's application of the exception absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based on a weighing of the relevant factors."). Trustworthiness is key to that rule, and district court decisions on that facet of the FRE 807 exception are entrusted to district court discretion. *United States v. Angulo*, 4 F.3d 843, 845 n.2 (9th Cir. 1993); *United States v. Sanchez-Lima*, 161 F.3d 545, 547 (9th Cir. 1998).

In short, the abuse of discretion standard of review applies here to the district court's FRE 803(6) and 807 decisions. As will be discussed *infra*, the district court applied the correct legal standard pertinent to both FRE 803(6) and 807, a legal standard rooted in the trustworthiness of the hearsay information. The district court's interpretation was consistent with those rules and decisional law arising under them. The district court did not abuse its discretion in applying the rules, and rejecting the admission of exhibit 37, where the email contents of the exhibits so plainly lacked trustworthiness.

(2)    Elements of an ADA Title I Claim

The EEOC brought a single claim against Covius under the ADA's Title I that provides "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

22

conditions, and privileges of employment." 42 U.S.C. § 12112(a).[9]

The EEOC bore the burden of proving that Covius would have hired Ebert "but for" her disability. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)); *Kannan v. Apple, Inc.*, 2022 WL 3373918 (9th Cir. 2022). Accordingly, the EEOC's burden was simple: "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [a covered disability] was the 'but-for' cause of the challenged employer decision." *Gross*, 557 U.S. at 177-78. The EEOC did not do so.

The EEOC did not show that Ebert's migraines or her use of prescription medication were the but-for cause of Covius's decision not to hire her. Neither was, in fact, a cause at all. Covius had numerous non-discriminatory reasons for not hiring Ebert. Her real work history was inconsistent with the resume that Aerotek submitted

---

[9] Throughout its brief, Covius references Ebert's "alleged disability." The existence of a disability was not the central focus of the case below. Rather, causation was the key issue. A disability is covered by the ADA only if a party can show a physical or mental impairment that substantially limited one or more major life activities. Ninth Circuit Model Rule 12.1. An impairment substantially limits a life activity if it limits the person's ability to perform it compared with most of the population. 29 C.F.R. 1630.2(j)(1)(ii). The EEOC did not show that Ebert's migraines, however painful, substantially limited her major life functions. *Enright v. Solar Turbines Inc.*, 46 F. App'x 548, 549 (9th Cir. 2002). The use of a powerful addictive opioid like oxycodone may not constitute a disability in many circumstances, as the EEOC itself has indicated. EEOC, EEOC-NTVA-2020-2. *Use of Codeine, Oxycodone, and Other Opioids: Information for Employees* (2020).

23

for her. That history showed a lack of job commitment or relevant experience. Ebert admitted that her Excel skills were mediocre. Covius had a better qualified candidate in Sharnetsky. Covius also had other more qualified candidates like Alexis Gilbertsen and Thomas Thayer. 2-ER-228–31.

Not only were the facts clear that Covius did not discriminate against Ebert on the basis of her alleged disability, but any evidence of Covius's alleged discrimination as to Ebert was untrustworthy and inadmissible.

(3)    The EEOC's Principal Evidence of "Discrimination" by Covius Was Inadmissible Hearsay

The district court correctly ruled with respect to the EEOC's motion *in limine* that exhibit 37, the central basis for the EEOC's claim against Covius, contained inadmissible hearsay and that such hearsay did not fall within the business record exception to the hearsay rule. FRE 803(6). The court later ruled at trial, in light of the evidence presented, that it was inadmissible under the FRE 807 exception.

This Court should not lose sight of the fact that the EEOC seeks a very broad treatment of hearsay evidence. The Supreme Court has made it clear in the criminal context that the right to confront an accuser is fundamental to our system of justice. *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). It is no less true in the civil setting.

Importantly, the district court initially permitted the admission of exhibit 37 under the exception to hearsay in FRE 807(1), but that initial admission was

24

predicated on the fact that the witnesses who allegedly told Richardson of the "discrimination" against Ebert would testify at trial. I-ER-34 ("… both Ostrander and Dobson [Richardson] are available to testify to this business practice.") Their testimony, as well as Richardson's recanting testimony, effectively undercut any trustworthiness in the out-of-court statements related in exhibit 37. The district court, therefore, properly excluded the exhibit rife with hearsay.

(a)     FRE 803(6)

Under FRE 803(6), a record of an act, event, condition, opinion, or diagnosis is an exception to the rule against hearsay if:

(A) the record was made at or near the time by–or from information transmitted by–someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness.

Regarding emails, courts look to five factors in determining whether an email is an admissible business record:

(1) it was sent or received contemporaneously with the events described

25

in the email; (2) it was sent by someone with knowledge of the events documented in the email; (3) it was sent or received in the course of a regular business activity; ( 4) it is the producing [entity's] regular practice to send or receive emails that record the type of events documented in the email; and (5) a custodian or qualified witness attests that these conditions have been fulfilled.

*Mays v. United Ass'ns Loc. 290 Apprenticeship & Journeymen Training Tr. Fund*, 407 F. Supp. 3d 1121, 1142 (D. Or. 2019); *Thomas v. Bronco Oilfield Servs.*, 503 F. Supp. 3d 276, 291 n.11 (W.D. Pa. 2020). The EEOC does not offer a different legal framework for applying the business records exception in FRE 803(6). Instead, it complains about the personal knowledge component of it. BA 23-27.

The EEOC's argument on this rule, BA 21-27, only confirms that the district court did not abuse its discretion in excluding exhibit 37. The hearsay exception in FRE 803(6) cannot be used to justify what is otherwise utterly inadmissible evidence merely because it appears somewhere in a record. The EEOC would have this Court believe that even a lie repeated in a regularly maintained business record could become admissible by the *process* of the hearsay's maintenance, without considering its substance – its trustworthiness. A lie repeated is still a lie. The EEOC simply refuses to address the trustworthiness of the *substance* of the hearsay, hoping that the process of the record keeping alone will meet the trustworthiness test. The unpublished Sixth Circuit case cited by the EEOC, *Haydar v. Amazon Corp.*, 2021 WL 4206279 (6th Cir. 2021) offers little support for the EEOC's position. The Sixth Circuit upheld the admission of a performance review on FRE 803(6) grounds

26

because the contents of the review were reliable, unlike Richardson's email.

Not every untrustworthy or flatly untruthful hearsay statement in a business record becomes admissible merely because it appears in such a business record. That is particularly true where, as here, a *double hearsay* problem is present. Richardson allegedly relied on statements from Ostrander and Gerety allegedly derived from Diaz. EEOC tries to avoid this patent problem with its argument in a footnote. BA 25 n.7. Gerety did not testify at trial, and Ostrander and Diaz's trial testimony made clear that Covius did not discriminate against Ebert as the EEOC obliquely *admits.* BA 27. ("To be sure, at trial Ostrander and Diaz do not recall making the statements Richardson attributed to them."). Richardson's observation lacked any trustworthiness.

Trustworthiness of the business record is a central factor in applying the exception, and the decision on trustworthiness by the district court is afforded wide discretion on review. *United States v. Scholl*, 166 F.3d 964, 978 (9th Cir. 1999). The district court did not abuse its discretion in finding the erroneous information conveyed by Richardson to be untrustworthy.

What the EEOC cannot escape is the obvious untrustworthiness of Richardson's communication of erroneous information she may (or may not) have gleaned from others. Richardson had no personal knowledge to support the statement made in the email. She was not at the Ebert interview. She did not talk to

27

anyone at Covius about the interview. Theoretically, she believed she may have received the information from someone with hearsay knowledge of the interview – Ostrander or Gerety or a third unnamed manager– but Ostrander believes she is the person that spoke to Covius's Andrea Diaz about the interview (although she wasn't sure) and she denied making any such statement to Richardson, and did not think anyone at Covius had told her anything discriminatory at all about not hiring a person because they take medications and/or have a disability. And, as the EEOC *admits*, Gerety never testified, nor did the third un-named person to whom Richardson believed she may have spoken. BA 27 ("To be sure, at trial Ostrander and Diaz did not recall making the statements Richardson attributed to them.") At trial, Richardson could not identify the statements' source and admitted that she might have made the comments up to soften the blow for a client she wished to continue serving. She also acknowledged that at the time she wrote the email, she didn't recognize that there was anything "wrong" with the statements she made in it.

To contend that such extraordinary flimsy "evidence" merits admission through a business record confirms that the district court did not abuse its ample discretion in excluding such evidence.

(b)    <u>FRE 807(1)</u>

FRE 807(1) allows the Court in *rare* circumstances to admit hearsay that does not fit a recognized exception if:

28

(a) In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

(1) the statement is supported by sufficient guarantees of trustworthiness–after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Here again, the district court correctly articulated the correct legal standard in applying FRE 807's hearsay exception. 1-ER-17. That legal standard is rooted again in the trustworthiness of the hearsay information. *Sanchez-Lima*, 161 F.3d at 547. The EEOC does not contend that the district court misunderstood that legal standard. BA 28-29. What is concerning is that the EEOC deliberately omitted a key aspect of that legal standard in its brief.

It is well-established, as noted *supra*, that this exception is "extremely narrow and require[s] testimony to be 'very important and reliable.'" *United States v. Washington*, 106 F.3d 983, 1001 (D.C. Cir. 1997) (per curiam) (quoting *United States v. Kim*, 595 F.2d 755, 766 (D.C. Cir. 1979)); *accord*, *S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215, 1225 (D.C. Cir. 1989) ("[T]he legislative history of the [residual hearsay] exception indicates that it should be applied sparingly.").

Otherwise, if the exception were too liberally applied, it would "swallow[] the hearsay rule." *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998); *United*

29

*States v. Mathis*, 559 F.2d 294, 299 (5th Cir. 1977) ("[T]ight reins must be held to insure that this provision does not emasculate our well-developed body of law and the notions underlying our evidentiary rules."). In *In re Mbunda*, 604 F. App'x 552, 554 (9th Cir. 2015), the Court rejected the notion that FRE 807 constituted a broad mechanism to trump contrary exceptions to hearsay or to serve as a means of "getting around" other rules. Thus, only in the most "truly exceptional cases" does Rule 807 make admissible a statement that does not fall within one of Rule 803's or Rule 804's enumerated hearsay exceptions. *See Phillips*, 219 F.3d at 404, 419 & n.23 (internal quotation marks omitted)). No such "exceptional" grounds apply here.

In addressing trustworthiness under FRE 807, an important factor that courts emphasize is whether "the declarant was 'highly unlikely to lie.'" *Id.* (quoting *Idaho v. Wright*, 497 U.S. 805, 819-20, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990)). *Accord*, *Rivers v. United States*, 777 F.3d 1306, 1314-15 (11th Cir. 2015) ("By requiring hearsay admitted under the residual exception to have circumstantial guarantees of trustworthiness that are like the guarantees of the specific exceptions, Rule 807 is clearly concerned, first and foremost, about whether the declarant originally made the statements under circumstances that render the statements more trustworthy"). That cannot be said here. Richardson *admitted* she had reason to lie to Ebert, her client, to "soften the blow." She also acknowledged that at the time she wrote, exhibit 37, she couldn't recall the source of the hearsay statements made in it. 3-ER-453–54.

30

The district court here did not abuse its discretion in excluding exhibit 37 after hearing the trial evidence. The EEOC presented an email where the sender could not cite her source for its contents, admitted she may have misremembered both the content and the source of her information, and admitted she might even have lied to soften the blow to Ebert. The district court properly excluded exhibit 37 as untrustworthy and therefore inadmissible under FRE 807.

    (4)    <u>EEOC's Argument that Circumstantial Evidence Supported Its Title I Claim Is Baseless</u>

The EEOC contends in its brief at 34-40 that other circumstantial evidence allegedly supported its claim of Covius's discrimination against Ebert.  Not so.

Leaving aside the EEOC's lengthy arguments in footnotes, BA 34-35, that federal courts disapprove, *City of Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010) (argument offered only in footnote waived), the evidence that the EEOC proffers fails to demonstrate that Covius did not hire Ebert because of her alleged disability.

First, Smelko's consideration of Ebert's alleged disabilities (BA 37) does not establish a discriminatory nexus.  As noted *supra*, he noted these conditions so Covius would remember to accommodate them.

Second, the EEOC is wrong about the hiring of others for the position.  BA 37-38. *Compare* 2-ER-250 (Ebert's resume with scores) *with* 2-ER-230 (ranking Sharnetsky's Excel skill at 6).

31

Finally, the EEOC's attempt to manufacture discriminatory intent from Diaz's testimony is tawdry. Diaz graded Ebert 5 out of 10. Smelko rated her 3.75 Those were hardly "flying colors" evaluations. One mark was barely passing, and the other was a "fail." Covius was entitled to hire better qualified candidates than Ebert, whose resume was full of inaccuracies and listed little to no relevant experience.

Simply put, Covius had ample, non-discriminatory reasons for not hiring Ebert.

G.     CONCLUSION

The district court correctly excluded exhibit 37 and correctly dismissed EEOC's complaint under Rule 50(a). This Court should affirm the district court's judgment. Costs on appeal should be awarded to Covius.

DATED this 29th day of December, 2025.

Respectfully submitted,

/s/ Philip A. Talmadge
Philip A. Talmadge, WSBA #6973
Talmadge/Fitzpatrick
2775 Harbor Avenue SW
Third Floor, Suite C
Seattle, WA 98126
(206) 574-6661

Suzanne K. Michael, WSBA #14072
Jeremy F. Wood WSBA #51803
Fisher Phillips LLP
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
(206) 682-2308

32

Attorneys for Appellee
Covius Services, LLC

CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume of limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,938 words as counted by Microsoft Word 2016, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 36(a)(6) because it has been prepared in a proportionally spaced serif typeface using Microsoft Word 2016 in 14-point Times New Roman.

DATED this 29th day of December, 2025.

 /s/ Philip A. Talmadge
Philip A. Talmadge, WSBA #6973
Talmadge/Fitzpatrick
2775 Harbor Avenue SW
Third Floor, Suite C
Seattle, WA 98126
(206) 574-6661

Suzanne K. Michael, WSBA #14072
Jeremy F. Wood, WSBA #51803
Fisher Phillips LLP
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
(206) 682-2308

Attorneys for Appellee
Covius Services, LLC

34

## STATEMENT OF RELATED CASES

I, Philip A. Talmadge, certify that per Circuit Rule 28-2.6, that there are no known related cases pending in this Court.

DATED this 29th day of December, 2025.

/s/ Philip A. Talmadge
Philip A. Talmadge, WSBA #6973
Talmadge/Fitzpatrick

35