No. 25-2118

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Equal Employment Opportunity Commission,
 Plaintiff-Appellant,

v.

Covius Services, LLC,
 Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of Washington
No. 2:23-cv-00186
Hon. Thomas O. Rice

**REPLY BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AS PLAINTIFF-APPELLANT**

CATHERINE ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

STEVEN WINKELMAN
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

# TABLE OF CONTENTS

Table of Authorities ....................................................................................ii

Introduction ...............................................................................................1

Argument ...................................................................................................3

I.     The district court abused its discretion in striking Richardson's
       interview-feedback email on hearsay grounds. .....................................3

       A.     Richardson's interview-feedback email is admissible under
              the business-record exception. .....................................................3

              1.     Richardson wrote the interview-feedback email based
                     on information from "someone with knowledge." ............4

              2.     Covius cannot meet its burden to show that the
                     interview-feedback email was untrustworthy. .................11

       B.     Richardson's interview-feedback email is admissible under
              the residual exception. ...............................................................16

       C.     Other exhibits and testimony discussing the interview-
              feedback email were also admissible. ..........................................20

II.    The district court did not consider other circumstantial evidence
       from which the jury could have inferred discrimination. .....................20

       A.     The jury reasonably could have found that Covius refused
              to hire Ebert because of her disabilities or medication...............21

       B.     Covius's belated attempt to challenge disability is meritless....28

Conclusion................................................................................................32

Certificate of Compliance

Certificate of Service

i

## TABLE OF AUTHORITIES

**Cases**

*Akridge v. Alfa Ins. Cos.*,
93 F.4th 1181 (11th Cir. 2024) ..................................................................21

*Am. Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025) ...................................................................18

*Aragon v. Republic Silver State Disposal, Inc.*,
292 F.3d 654 (9th Cir. 2002) ................................................................ 18-19

*Cadena v. Customer Connexx LLC*,
51 F.4th 831 (9th Cir. 2022) ......................................................................29

*Cordova v. State Farm Ins. Cos.*,
124 F.3d 1145 (9th Cir. 1997) ....................................................................24

*Crawford v. Washington*,
541 U.S. 36 (2004) ......................................................................................19

*Flo & Eddie, Inc. v. Pandora Media, LLC*,
789 F. App'x 569 (9th Cir. 2019) ...............................................................27

*Gogos v. AMS Mech. Sys., Inc.*,
737 F.3d 1170 (7th Cir. 2013) ....................................................................31

*Gribben v. United Parcel Serv., Inc.*,
528 F.3d 1166 (9th Cir. 2008) ....................................................................32

*Grimm v. Gloucester Cnty. Sch. Bd.*,
400 F. Supp. 3d 444 (E.D. Va. 2019) .........................................................12

*Haydar v. Amazon Corp., LLC*,
No. 19-2410, 2021 WL 4206279 (6th Cir. Sept. 16, 2021) ..........................9

*Head v. Glacier Nw. Inc.*,
413 F.3d 1053 (9th Cir. 2005) ....................................................................32

*Hernandez v. Garland*,
   47 F.4th 908 (9th Cir. 2022) ................................................................28

*Humphrey v. Mem'l Hosps. Ass'n*,
   239 F.3d 1128 (9th Cir. 2001) ..............................................................21

*In re EPD Inv. Co., LLC*,
   114 F.4th 1148 (9th Cir. 2024) ...............................................................7

*In re Mortg. Elec. Registration Sys., Inc.*,
   754 F.3d 772 (9th Cir. 2014) ................................................................28

*In re Oil Spill by the Oil Rig Deepwater Horizon*,
   MDL No. 2179, 2012 WL 85447 (E.D. La. Jan. 11, 2012)................................7

*Joseph v. City of San Jose*,
   No. 23-15358, 2024 WL 4144077 (9th Cir. Sept. 11, 2024) ............................19

*Kinney v. Emmis Operation Co.*,
   291 F. App'x 789 (9th Cir. 2007) ..........................................................22

*Kirshner v. Uniden Corp. of Am.*,
   842 F.2d 1074 (9th Cir. 1988) ..............................................................27

*Koch v. UNUM Grp.*,
   No. 24-6634, 2025 WL 3124478 (9th Cir. Nov. 7, 2025) ...............................21

*Lannes v. Flowserve U.S., Inc.*,
   628 F. App'x 957 (9th Cir. 2015) ..........................................................11

*Las Vegas Sands, LLC v. Nehme*,
   632 F.3d 526 (9th Cir. 2011) ..................................................................6

*McAlindin v. Cnty. of San Diego*,
   192 F.3d 1226 (9th Cir. 1999) ..............................................................32

*McGinest v. GTE Serv. Corp.*,
   360 F.3d 1103 (9th Cir. 2004) ..............................................................26

iii

*Miller v. Sawant*,
   114 F.4th 1071 (9th Cir. 2024) ...............................................................6

*Muniz v. United Parcel Serv., Inc.*,
   738 F.3d 214 (9th Cir. 2013) .................................................................6

*Murray v. Mayo Clinic*,
   934 F.3d 1101 (9th Cir. 2019) ........................................................ 21, 32

*Nunies v. HIE Holdings, Inc.*,
   908 F.3d 428 (9th Cir. 2018) ...............................................................30

*Peak v. Kubota Tractor Corp.*,
   559 F. App'x 517 (6th Cir. 2014) .........................................................10

*Rohr v. Salt River Project Agric. Imp. & Power Dist.*,
   555 F.3d 850 (9th Cir. 2009) ...............................................................31

*Roth v. Foris Ventures, LLC*,
   86 F.4th 832 (9th Cir. 2023) ................................................................29

*Sharp Structural, Inc. v. Franklin Mfg., Inc.*,
   283 F. App'x 585 (9th Cir. 2008) .........................................................28

*Shields v. Credit One Bank, N.A.*,
   32 F.4th 1218 (9th Cir. 2022) ..............................................................30

*Shirk v. U.S. ex rel. Dep't of Interior*,
   773 F.3d 999 (9th Cir. 2014) ...............................................................29

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
   52 F.4th 1054 (9th Cir. 2022) ..............................................................21

*United States v. Bonds*,
   608 F.3d 495 (9th Cir. 2010) ........................................................ 17, 18

*United States v. Bueno-Sierra*,
   99 F.3d 375 (11th Cir. 1996) .................................................................8

iv

*United States v. Castro*,
704 F. App'x 675 (9th Cir. 2017) ...................................................................12

*United States v. Espinoza*,
880 F.3d 506 (9th Cir. 2018) ...........................................................................6

*United States v. Matta-Quiñones*,
140 F.4th 1 (1st Cir. 2025)..................................................................... 5, 8, 9

*United States v. Ray*,
930 F.2d 1368 (9th Cir. 1990) .......................................................................10

*United States v. Redd*,
562 F.3d 309 (5th Cir. 2009) ..........................................................................11

*United States v. Smith*,
804 F.3d 724 (5th Cir. 2015) ..........................................................................12

*United States v. Turner*,
189 F.3d 712 (8th Cir. 1999) ............................................................................8

*United States v. Valdez-Soto*,
31 F.3d 1467 (9th Cir. 1994) ............................................................... 17, 18, 19

*United States v. Walker*,
117 F.3d 417 (9th Cir. 1997) ............................................................................6

*United States v. Wells*,
879 F.3d 900 (9th Cir. 2018) ............................................................................6

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
992 F.3d 1366 (Fed. Cir. 2021) .....................................................................12

*Williams v. Woodford*,
384 F.3d 567 (9th Cir. 2004) .................................................................... 10-11

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,
274 F.3d 1276 (9th Cir. 2001) .......................................................................23

**Statutes**

42 U.S.C. § 12102.......................................................................... 29, 30, 31

ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12101 *et seq.*.............30

**Rules and Regulations**

29 C.F.R. § 1630.2.....................................................................................30

Fed. R. Civ. P. 50......................................................................................28

Fed. R. Evid. 801 .....................................................................................10

Fed. R. Evid. 803 .......................................................................... *passim*

Fed. R. Evid. 803(6) advisory committee notes to 2014 amendments.... 12, 13

Fed. R. Evid. 805 .................................................................................8, 10

Fed. R. Evid. 807 .......................................................................... *passim*

**Other Authorities**

30B Wright & Miller's Fed. Prac. & Proc. § 6866 (2025 ed.) .......................6, 10

## INTRODUCTION

As the EEOC explained in its opening brief, the district court erred in dismissing this disability discrimination action in the middle of trial and its ruling should be reversed for two independently sufficient reasons. First, the court abused its discretion in striking on hearsay grounds an email and related evidence that provided direct proof Covius Services, LLC refused to hire Kelli Ebert for an entry-level data-entry position because of her chronic migraines and fibromyalgia or because she used physician-prescribed pain-management medications to treat those conditions. In doing so, the court misconstrued the Federal Rules of Evidence and relied on clearly erroneous factual findings. Second, the court did not consider other circumstantial evidence from which the jury reasonably could have inferred that Covius discriminated on the basis of disability.

Covius's response largely fails to grapple with those errors or the EEOC's arguments. With respect to the evidentiary ruling, Covius all but concedes that the stricken email satisfies most of the requirements for admission under Rule 803(6)'s business-record exception or Rule 807's residual exception. As to the remaining requirements, Covius cannot refute that the district court misinterpreted Rule 803(6) by requiring the author of

a business record to have firsthand personal knowledge of the events she recorded. The rule's text, which expressly allows the author of a business record to rely on information from others, contradicts that reading. Nor can Covius refute that the factual findings underlying the court's ruling on the residual exception rested on mischaracterizations of key testimony. The record contradicts those findings.

Covius likewise fails to confront the other circumstantial evidence showing that it discriminated against Ebert. That evidence included the fact that Covius chose not to hire Ebert shortly after she disclosed her conditions and medication, one of Ebert's Covius interviewers (and the relevant decisionmaker, according to Covius) specifically remarked on her migraines and medication in his interview notes, Covius hired candidates without disabilities whose qualifications were inferior to or comparable with Ebert's, and Covius has offered shifting and contradictory explanations for refusing to hire Ebert. Covius cannot account for that evidence, and its remaining arguments improperly invite inferences and credibility determinations in its favor.

In the end, Covius cannot defend or justify the district court's errors. Accordingly, this Court should vacate the judgment and remand.

2

## ARGUMENT

**I.  The district court abused its discretion in striking Richardson's interview-feedback email on hearsay grounds.[1]**

In her interview-feedback email, Aerotek recruiter Haleigh Richardson[2] stated that Covius chose not to hire Ebert because Ebert "had mentioned [she was] on pain medication for [her] migraines" and Covius's "pre screening process does not allow for pain medication." 2-ER-252. That email was admissible under Rule 803(6)'s business-record exception or Rule 807's residual exception. In ruling otherwise, the district court abused its discretion by misconstruing Rule 803(6)'s requirements and by relying on clearly erroneous factual findings.

**A.  Richardson's interview-feedback email is admissible under the business-record exception.**

Covius all but concedes that Richardson's interview-feedback email satisfies most of Rule 803(6)'s requirements. *See* Covius Br. at 25-28. Covius does not dispute that the email was made at or near the time of the event it

---

[1] In the district court, the EEOC raised or addressed these evidentiary issues at 2-ER-189-200, 2-ER-142-47, 2-ER-65-72, 3-ER-440-41, and 1-ER-8-13. The district court's rulings appear at 1-ER-5-6, 1-ER-7-17, and 1-ER-30-36.

[2] Some testimony and evidence use Richardson's former last name, Dobson. *See* 3-ER-418:14-19. For clarity, we refer to her only as Richardson.

3

recorded, that it was kept in the course of a regularly conducted business activity, or that making such records was a regular practice of that activity. *See* Fed. R. Evid. 803(6)(A)-(C). Nor does Covius dispute that Richardson was a qualified witness for the purpose of establishing these conditions. *See* Fed. R. Evid. 803(6)(D).

Those tacit concessions leave only two contested points: (1) whether the email was made "by — or from information transmitted by — someone with knowledge," Fed. R. Evid. 803(6)(A); and (2) whether Covius could "show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness," Fed. R. Evid. 803(6)(E). The answers, respectively, are yes and no.

### 1. Richardson wrote the interview-feedback email based on information from "someone with knowledge."

Richardson wrote the interview-feedback email based on information from "someone with knowledge" because she received Covius's feedback about Ebert from an Aerotek account manager (Brittany Ostrander[3] or

---

[3] Some testimony and evidence use Ostrander's former last name, LeFleur. *See* 3-ER-489:14-23. For clarity, we refer to her only as Ostrander

Madelyn Gerety) who, in turn, received the feedback from one of Ebert's

Covius interviewers (Andrea Diaz). EEOC Br. at 23-26. Like this:



That chain of communications was consistent with Aerotek's and Covius's

established practice for sending and receiving interview feedback about

candidates. *Id.* at 7-11. As Covius itself acknowledges, "Aerotek's process"

included "receiv[ing] feedback … from [Covius's] hiring managers, and

then communicat[ing] the same to a candidate." Covius Br. at 4-5. As a

result, Richardson's email satisfied the business-record exception. *See*

*United States v. Matta-Quiñones*, 140 F.4th 1, 25-28 (1st Cir. 2025).

In ruling otherwise, the district court misconstrued Rule 803(6) by

requiring the EEOC to show that Richardson had firsthand "personal

knowledge of the events" recorded in her email. 1-ER-33. The rule contains

no such requirement. Rather, its plain text makes clear that the author of a

business record may rely on "information transmitted by … someone with

5

knowledge," Fed. R. Evid. 803(6)(A), and need not have "firsthand personal knowledge of the recorded event," 30B Wright & Miller's Fed. Prac. & Proc. § 6866 (2025 ed.). The district court thus "applied the wrong legal standard in excluding the evidence," which means "it necessarily abused its discretion." *United States v. Espinoza*, 880 F.3d 506, 509 (9th Cir. 2018); *see also Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (applying "incorrect legal standard" is abuse of discretion).

Covius makes little effort to defend the district court's misreading of Rule 803(6), and what little effort it makes is unavailing. To start, the court's interpretation is not owed deference, as Covius mistakenly suggests. Covius Br. at 20-22. This Court has long held that a district court's "construction or interpretation of the Federal Rules of Evidence is a question of law subject to *de novo* review." *United States v. Walker*, 117 F.3d 417, 419 (9th Cir. 1997); *accord United States v. Wells*, 879 F.3d 900, 914 (9th Cir. 2018); *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013). Here, the relevant question is "whether the court properly interpreted [Rule 803(6)'s] requirements," and this Court "review[s] that question de novo." *Miller v. Sawant*, 114 F.4th 1071, 1074 (9th Cir. 2024) (citation omitted).

6

Covius's remaining efforts merely replicate the district court's error. Much like the district court, Covius insists that Rule 803(6) has a "personal knowledge component," Covius Br. at 26, but it makes no attempt either to square that requirement with the rule's text or to address the numerous authorities rejecting such a requirement. The two lower court decisions Covius cites in support of a personal-knowledge requirement simply quote from *In re Oil Spill by the Oil Rig Deepwater Horizon*, MDL No. 2179, 2012 WL 85447 (E.D. La. Jan. 11, 2012), the same opinion on which the district court here relied. *See* 1-ER-32-33. Those decisions are no more binding or persuasive than *Deepwater Horizon* — which, as the EEOC has already explained, is neither. EEOC Br. at 26-27.

Perhaps recognizing that Rule 803(6) does not have a direct-personal-knowledge requirement, Covius briefly tries to recast Richardson's reliance on information from others as a hearsay-within-hearsay problem. Covius Br. at 27. As an initial matter, it is not clear Covius preserved that specific objection. S*ee In re EPD Inv. Co., LLC*, 114 F.4th 1148, 1164 n.12 (9th Cir. 2024). Neither Covius's motion *in limine* nor its response to the EEOC's motions mentioned a double-hearsay problem. Although Covius made a passing reference to "hearsay upon hearsay" during the pre-trial

7

conference, it did not elaborate on the argument or cite any supporting authority. *See* EEOC Br. at 25 n.7; 3-ER-313:3. The district court understandably did not address that unasserted and undeveloped objection. *See* 1-ER-30-35.

Even if Covius had properly raised such an objection, Richardson's email does not present a hearsay-within-hearsay problem because each link in the precipitating chain of communications independently satisfies a hearsay exception or exemption. *See Matta-Quiñones*, 140 F.4th at 25-28; *United States v. Bueno-Sierra*, 99 F.3d 375, 379 n.10 (11th Cir. 1996); *see also* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

The first link, Ostrander or Gerety's statement to Richardson, falls squarely within the business-record exception. As other courts have explained, "records containing multiple layers of hearsay" are admissible under the business-record exception "when a chain of employees, all acting in the regular course of business, conveys information to a co-worker who duly records it." *Matta-Quiñones*, 140 F.4th at 26; *see also United States v. Turner*, 189 F.3d 712, 720 (8th Cir. 1999) (business records containing

hearsay-within-hearsay are admissible where "both the source and recorder of the information were acting in the regular course of the organization's business"); *Haydar v. Amazon Corp., LLC*, No. 19-2410, 2021 WL 4206279, at *8-9 (6th Cir. Sept. 16, 2021) (similar). Here, Ostrander or Gerety were operating in the regular course of business and following Aerotek's established process when they collected and conveyed Covius's interview feedback to Richardson, who recorded it. *See* 3-ER-503:1-15; *see also* EEOC Br. at 7-11.

The next link, Diaz's statement to Ostrander or Gerety, satisfies the business-record exception or the party-opponent exemption — either of which supplies an independently sufficient ground for admission. Diaz's statement satisfies the business-record exception because she routinely conveyed Covius's interview feedback to Aerotek account managers as part of a "standard practice." 4-ER-580:24-581:4, 581:11-13, 582:3-20. In other words, Diaz was acting in the regular course of business when she supplied Covius's feedback about Ebert to Aerotek. *See Matta-Quiñones*, 140 F.4th at 27 (information contained in business record but supplied by "outsider" to the business "is sufficiently reliable to be admitted under the business records exception when the outsider was also acting within the

9

regular course of business or under a 'business duty' to provide accurate information"); *Peak v. Kubota Tractor Corp.*, 559 F. App'x 517, 523 (6th Cir. 2014) (similar).

Diaz's statement also satisfies the party-opponent exemption because she spoke as Covius's agent "on a matter within the scope of" her employment and Covius "authorized [her] to make a statement on the subject." Fed. R. Evid. 801(d)(2)(C), (D); *see also United States v. Ray*, 930 F.2d 1368, 1370 & n.6 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23, 1991) (affirming admission of record containing statements by party opponent); 30B Wright & Miller's Fed. Prac. & Proc. § 6866 (2025 ed.) ("If … the outsider statement itself falls within a hearsay exception or exemption, such as a statement of a party opponent, the entire record can be admitted by reference to both that exception and Rule 803(6) by virtue of Rule 805.").

Despite acknowledging that the EEOC advanced these arguments in its opening brief, Covius offers no response. *See* Covius Br. at 27 (citing EEOC Br. at 25 n.7). Instead, it merely criticizes the EEOC for addressing a potential hearsay-within-hearsay objection in a footnote. *Id.* But this Court will consider arguments made in a footnote where, as here, the footnote "contains supporting citations to case law and the record." *Williams v.*

10

*Woodford*, 384 F.3d 567, 587 n.5 (9th Cir. 2004); s*ee also United States v. Redd*, 562 F.3d 309, 314 (5th Cir. 2009) (similar). In any event, the EEOC's footnote did not raise a new issue or claim, but simply anticipated an alternative ground for affirmance that Covius might have raised. An appellant is not required to address such arguments in its opening brief, let alone in the body of the brief. *See Lannes v. Flowserve U.S., Inc.*, 628 F. App'x 957, 959 n.1 (9th Cir. 2015) (an appellant "need not anticipate, at penalty of forfeiture, what alternative bases for affirmance an appellee might raise on appeal").

In short, the EEOC established that Richardson wrote the interview-feedback email based on information from someone with knowledge, and the district court applied the wrong legal standard in holding otherwise. The email thus satisfied Rule 803(6)'s affirmative requirements. *See* Fed. R. Evid. 803(6)(A)-(D).

### 2. Covius cannot meet its burden to show that the interview-feedback email was untrustworthy.

Because the EEOC established that the interview-feedback email satisfies Rule 803(6)'s affirmative requirements, Covius bears the burden as "the opponent" to "show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R.

Evid. 803(6)(E); *see also* EEOC Br. at 27-28. The district court never assessed whether Covius could meet that burden. For a host of reasons, Covius cannot do so.

At the outset, Covius tries to evade its burden by insisting that it need not "prov[e] the inapplicability" of the business-record exception. Covius Br. at 18. Once again, Covius simply fails to come to terms with Rule 803(6)'s text, which "makes clear that the burden of showing untrustworthiness falls on the opponent of the records." *Grimm v. Gloucester Cnty. Sch. Bd.*, 400 F. Supp. 3d 444, 455 (E.D. Va. 2019), *aff'd*, 972 F.3d 586 (4th Cir. 2020); *accord United States v. Castro*, 704 F. App'x 675, 677 (9th Cir. 2017), *as amended on denial of reh'g* (Nov. 1, 2017); *United States v. Smith*, 804 F.3d 724, 729 (5th Cir. 2015).

The advisory committee notes accompanying Rule 803(6) confirm as much. *See Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1371 (Fed. Cir. 2021). They explain that where, as here, "the proponent has established the stated requirements of the exception … then the burden is on the opponent to show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6) advisory committee notes to 2014 amendments. "It is appropriate to

impose this burden on the opponent," the notes continue, "as the basic admissibility requirements are sufficient to establish a presumption that the record is reliable." *Id.* Given the rule's clear language, Covius's attempts to distinguish decisions "attributing the burden on trustworthiness to the opponent of the evidence," Covius Br. at 19, are puzzling.

More problematically, Covius's modest efforts to establish untrustworthiness rest on mischaracterizations of Richardson's trial testimony. Covius asserts, for instance, that "Richardson could not identify the … source" of the information she included in her email. Covius Br. at 28. But Richardson repeatedly and consistently testified that she received Covius's interview feedback about Ebert from Ostrander or Garety (each of whom served as Aerotek account managers on the matter at different times), and that they received the feedback from Diaz (one of the Covius supervisors who interviewed Ebert). *See* 3-ER-421:5-10, 440:4-15, 441:3-12, 451:14-15, 456:15-18, 469:23-470:8, 477:5-10; *see also* 2-ER-283. To the extent Richardson agreed a third Aerotek manager might have supplied the information to her, she appears to have simply been misled by Covius's questions. *See* EEOC Br. at 9 n.5.

13

Moreover, although Richardson could not recall which of the two Aerotek account managers provided the feedback to her, other evidence shows it was Ostrander. Ostrander testified that she was the Aerotek account manager on the matter by the time of Ebert's interview in March 2020 (3-ER-495:8-496:5; *see also* 2-ER-226-27); Diaz testified that Ostrander was her "primary contact" at Aerotek at that time (3-ER-555:2-4; 4-ER-569:12-15); and contemporaneous emails confirm that Ostrander communicated with both Richardson and Diaz about Ebert's application (2-ER-239-40, 246; *see also* 2-ER-258-59). Indeed, in a later email exchange with an Aerotek employee relations representative, Ostrander did not dispute that "Diaz gave [her] the verbal feed back stating that [Covius] wanted to pass due to [Ebert's] disability." 2-ER-278-79; *see also* 3-ER-512:22-513:11.

Covius next claims Richardson "admitted that she might have made the comments up." Covius Br. at 28. She did not. While Richardson agreed it was "possible" she included Covius's feedback about Ebert's conditions and pain-management medication in her email to "soften the message," 3-ER-479:11-17, she immediately clarified that she did not fabricate that feedback. When asked in the very next question whether she had "manufactured that statement" or whether it was "the statement [she]

14

heard," Richardson responded, "That was the statement I heard." 3-ER-479:21-23. Covius does not even acknowledge that testimony.

Those misrepresentations aside, Covius does not—and cannot—account for the numerous pieces of evidence and other indicia of reliability reinforcing Richardson's version of events. *See* EEOC Br. at 29-31. Chief among that evidence are Covius manager Alan Smelko's handwritten interview notes commenting on Ebert's "PAIN MGMT Med's." and "MIGRAINS," 2-ER-250, and his later confirmation that Ebert likely disclosed her conditions and medications in response to his questions about Covius's drug-testing requirement, 4-ER-709:25-710:7. Both lend credence to Richardson's statement that Covius expressed concerns about Ebert's "pain medication for [her] migraines" given the company's "pre screening process." 2-ER-252. Again, it is difficult to imagine how Richardson might have invented feedback that so closely aligned with Smelko's notes and testimony.

Left without any evidence to meet its burden, Covius claims the district court itself "[e]ssentially" found that Richardson's email "lacked trustworthiness" in its ruling on the parties' motions *in limine*. Covius Br. at 12. But the court reached the exact opposite conclusion in that order,

15

finding that Richardson's email bore "sufficient guarantees of trustworthiness" for purposes of the residual exception. 1-ER-34. The court did not separately assess trustworthiness for purposes of the business-record exception only because it thought Rule 803(6) required Richardson to have direct personal knowledge of the event she recorded.

In the end, Covius cannot meet its burden under Rule 803(6) to show that Richardson's email was untrustworthy. Accordingly, the email was admissible under the business-record exception.

## B. Richardson's interview-feedback email is admissible under the residual exception.

Covius again all but concedes that Richardson's interview-feedback email satisfies most of Rule 807's requirements. *See* Covius Br. at 28-31. Covius does not dispute that the email was more probative of its motives than other evidence the EEOC could reasonably obtain. *See* Fed. R. Evid. 807(a)(2). Nor does Covius dispute that the EEOC provided reasonable notice of its intent to offer the email. *See* Fed. R. Evid. 807(b). The only remaining issue is whether Richardson's email was "supported by sufficient guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). Here,

16

unlike in the Rule 803(6) context, the EEOC held the burden to establish those guarantees of trustworthiness. And here, the EEOC met that burden.

To begin, Covius fails to engage with the district court's initial determination that sufficient guarantees of trustworthiness supported Richardson's email. It does not contest that Richardson's email, at a minimum, "*almost* fits into the business record exception," 1-ER-34, which "cuts in favor of admissibility under the residual exception," *United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010). It does not contest that other evidence (including Smelko's handwritten notes) corroborates Richardson's account, 1-ER-35, which "is a valid consideration in determining the trustworthiness of out-of-court statements," *United States v. Valdez-Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994). Nor does it contest that Richardson did not write the email "in anticipation of litigation," 1-ER-35, or that her account has remained consistent over time, EEOC Br. at 31. These facts continue to bolster the trustworthiness of Richardson's email.

Likewise, Covius does not dispute that the district court reversed that initial determination based solely on its later findings that Richardson had "no idea" where she got Covius's feedback and that she had effectively admitted to lying. 1-ER-9-10, 16-17. The record does not support those

17

findings, which misstate or mischaracterize Richardson's testimony. *Supra* at Part I.A.2; EEOC Br. at 31-33. The court thus based its decision on clearly erroneous factual findings, which is an abuse of discretion. *See Am. Encore v. Fontes*, 152 F.4th 1097, 1109 (9th Cir. 2025). Covius does not attempt to defend those findings, but instead simply repeats them. Covius Br. at 30.

Covius points out that some courts narrowly construe the residual exception. Covius Br. at 29-30. Perhaps. But this Court has clarified that Rule 807 "exists to provide judges a 'fair degree of latitude' and 'flexibility' to admit statements that would otherwise be hearsay." *Bonds*, 608 F.3d at 501 (quoting *Valdez–Soto*, 31 F.3d at 1471). And in any event, the question here is not whether the residual exception applies in the first instance. The district court initially found that it did. The question is whether the district court abused its discretion in reversing its initial ruling based on the two factual findings it made at trial. As explained above, the court abused its discretion because those factual findings were clearly erroneous. This case also presents the kind of "exceptional circumstances" that often warrant admission under the residual exception. *Bonds*, 608 F.3d at 501-02. Richardson's email provides direct evidence of Covius's discriminatory intent, which rarely happens. *See Aragon v. Republic Silver State Disposal*,

18

*Inc.*, 292 F.3d 654, 662 (9th Cir. 2002) ("[D]irect evidence of employment discrimination is rare.").

Finally, Covius appears to suggest that admitting Richardson's email under Rule 807 might run afoul of the Sixth Amendment's Confrontation Clause. Covius Br. at 24 (citing *Crawford v. Washington*, 541 U.S. 36 (2004)). That suggestion is curious for two reasons. One, the Confrontation Clause "applies only to criminal proceedings." *Joseph v. City of San Jose*, No. 23-15358, 2024 WL 4144077, at *3 (9th Cir. Sept. 11, 2024) (citation omitted). Two, Covius had the opportunity to and did cross examine Richardson (and Ostrander and Diaz). *See Valdez-Soto*, 31 F.3d at 1470 (no Confrontation Clause violation where "the putative declarant is in court, and the defendants are able to cross-examine him"). If anything, Richardson's availability as a trial witness made her email more admissible, not less. As this Court has explained, "the degree of reliability necessary for admission is greatly reduced where, as here, the declarant is testifying and is available for cross-examination, thereby satisfying the central concern of the hearsay rule." *Id.* (citation omitted).

19

## C. Other exhibits and testimony discussing the interview-feedback email were also admissible.

Covius does not contest that the district court's decision to strike other exhibits and testimony discussing Richardson's interview-feedback email turned entirely on its decision to exclude the email itself. EEOC Br. at 33-34. Accordingly, if this Court reverses the district court's exclusion of the interview-feedback email, it should likewise reverse the district court's exclusion of this other evidence.

## II. The district court did not consider other circumstantial evidence from which the jury could have inferred discrimination.[4]

Even if Richardson's interview-feedback email and related evidence had been properly stricken, the EEOC proffered other circumstantial evidence from which the jury could have reasonably found that Covius discriminated on the basis of disability. The district court did not consider that evidence.

---

[4] In the district court, the EEOC addressed Covius's oral motion to dismiss at 1-ER-14-16. The district court's rulings on the motion appear at 1-ER-3-4 and 1-ER-16-17.

**A. The jury reasonably could have found that Covius refused to hire Ebert because of her disabilities or medication.**

To establish causation, the EEOC had to show only that Ebert's chronic migraines or fibromyalgia, or her use of pain-management medications to treat those conditions, was one but-for cause of Covius's decision not to hire her. *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001). An employment action may have multiple but-for causes. *Koch v. UNUM Grp.*, No. 24-6634, 2025 WL 3124478, at *2 (9th Cir. Nov. 7, 2025); *see also Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1200 (11th Cir. 2024) (under ADA, disability need not be sole cause of adverse employment action).

Although the EEOC's opening brief set forth ample circumstantial evidence from which a reasonable jury could find that Covius chose not to hire Ebert because of her conditions or pain-management medications, EEOC Br. at 34-40, Covius offers only a perfunctory response with virtually no citation to legal authorities, Covius Br. at 31-32. Covius has thus forfeited the issue by failing to adequately brief it. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1078 n.13 (9th Cir. 2022) ("A party forfeits inadequately briefed and perfunctory arguments." (citation

21

modified)). Even if this Court were to overlook that forfeiture, Covius's arguments fare no better on their merits.

First, Covius does not address the suspicious timing between Ebert's disclosure of her conditions and Covius's decision not to hire her. The record shows that Covius chose not to hire Ebert almost immediately after the interview at which Ebert disclosed her conditions and medications. *See* 3-ER-465:11-13; 4-ER-582:11-13; 2-ER-101-02. That close timing supports an inference of discrimination. *See Kinney v. Emmis Operation Co.*, 291 F. App'x 789, 791 (9th Cir. 2007).

Second, Covius concedes that Smelko took notes on and considered Ebert's conditions and medication during her interview, but it claims he did so only to ensure "Covius would remember to accommodate [Ebert]." Covius Br. at 31. During the EEOC's investigation, however, Covius offered a contrary explanation, claiming that it "had *no obligation* to accommodate" Ebert. 2-ER-275 (emphasis added). And at trial, Smelko initially agreed that he did not "remember *anything* about [Ebert's] interview." 4-ER-701:7-9 (emphasis added); *see also* 4-ER-701:25-702:1 ("Q But you don't remember the interview itself? A No, not at all."). Putting aside those problems, Covius's argument improperly invites

22

inferences and credibility determinations in its favor. *See Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001) ("In ruling on a motion for [judgment as a matter of law], the court is not to make credibility determinations or weigh the evidence and should view all inferences in the light most favorable to the nonmoving party." (citation omitted)).

Third, Covius acknowledges that it hired for the same position two candidates—Alexis Gilbertson and Thomas Thayer—who did not have disabilities or use pain-management medications, but it claims those candidates were "more qualified" than Ebert. Covius Br. at 24. Covius does not explain how and the record does not support that assertion. Ebert had an associate's degree, was nearing completion of a bachelor's degree, and had relevant mortgage experience. 2-ER-249-51. By contrast, Gilbertson had only an associate's degree, Thayer's resume did not indicate any educational history, and neither Gilbertson nor Thayer had mortgage experience. 2-ER-228, 231; *see also* 4-ER-637:9-638:3, 639:22-640:2, 641:5-9, 743:4-8, 744:2-6. Based on those disparate backgrounds, a reasonable jury could find Gilbertson and Thayer were less qualified than Ebert or, at best, comparably qualified. Either finding would support an inference of

23

discrimination. *See Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (in failure-to-hire context, plaintiff raised inference of discrimination at prima facie stage by showing that "the employer continued to seek applications from persons with *comparable* qualifications" (emphasis added)).

Fourth, Covius acknowledges that it delayed the start date for Rosalee Sharnetsky (an applicant the company hired for one of the two openings to which Ebert had applied) until after she healed from hand surgery, but Covius claims it did so to accommodate her disability. Covius Br. at 8-9 & n.6. Again, the record does not support that assertion. Sharnetsky testified that she did not need or want to delay her start date after her surgery and that it was not her decision to do so. 4-ER-783:20-784:8. Contemporaneous emails suggest the only person who was "worried" about Sharnetsky's impairment was Diaz—one of the same Covius supervisors who interviewed Ebert. *See* 2-ER-255; 3-ER-500:8-19. Additionally, Covius's hiring of Sharnetskey did not prevent it from hiring Ebert, as Covius suggests. *See* Covius Br. at 24, 31-32. As the district court reasoned in rejecting that explanation at summary judgment, "[Covius's] argument that Ms. Sharnetsky was selected because she was more qualified

24

than Ms. Ebert is not dispositive on the issue because [Covius] had two identical positions available at that time." 2-ER-134-35.

Fifth, Covius fails to account for its shifting explanations for refusing to hire Ebert. Nor could it, because Diaz and Smelko flatly contradicted key parts of Covius's earlier explanation for its decision. While Covius initially claimed Diaz "made the decision not to staff Ms. Ebert," 2-ER-272, Diaz admitted that was not true, 4-ER-628:1-11, 633:16-21, and that she had in fact given Ebert a passing score reflecting that Ebert was hireable, 4-ER-618:14-619:2. While Covius initially claimed Ebert disclosed her conditions unprompted, 2-ER-272, 274, Smelko admitted Ebert likely did so in response to his questions about the drug-testing policy, 4-ER-709:25-710:7. While Covius initially claimed Diaz chose not to hire Ebert in part due to "inconsistencies" in Aerotek's candidate summary, 2-ER-272-75, Diaz admitted that she did not rely on Aerotek's candidate summaries, 4-ER-653:24-654:10. While Covius initially claimed Diaz chose not to hire Ebert in part due to concerns that Ebert's conditions might cause her to miss work, 2-ER-272-75, Diaz did not recall raising any such concerns and did not believe she would have done so, 4-ER-671:17-672:11. A reasonable jury could readily conclude that Covius's explanations were "unworthy of

25

credence" and thus evidenced discriminatory intent. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004). Rather than confronting these contradictions, Covius simply deems the EEOC's argument "tawdry." Covius Br. at 32. Its silence speaks volumes.

Sixth, Covius repeatedly notes that Smelko gave Ebert a poor rating after the interview. Covius Br. at 32. But the question here is not whether Smelko gave her a poor rating, but why he did so. For the reasons set forth above, a reasonable jury could find that he rated Ebert poorly because of her conditions or medication. While Covius elsewhere suggests the rating indicated Smelko thought "Ebert lacked the bare minimum of qualifications for the job," *id.* at 7, it later concedes "Ebert was minimally qualified for the position she sought," *id.* at 16. Along similar lines, while Covius appears to take issue with the EEOC's assertion that Diaz gave Ebert a passing score, *id.* at 7 n.4, it ultimately concedes Diaz did just that, *id.* at 15 (acknowledging that "one of [Ebert's] two interviewers gave her a passing mark").

Finally, Covius claims that the policies set forth in its employee handbook do not prohibit employees from using prescription drugs. Covius Br. at 2-3 (citing 1-SER-91-92, 96-99, 113-14). It is not clear what

26

Covius hopes to gain from that assertion. Neither Smelko nor Diaz recalled receiving any training on Covius's drug-testing policies and admitted they did not know how the process worked. 4-ER-575:9-576:3, 674:12-19, 716:15-24, 720:15-721:8.

It also bears mention that the defense exhibit Covius cites to describe its policies was neither offered nor admitted at trial. *See* 2-ER-61 (final exhibit list showing that Defense Exhibit 511 was not offered or admitted at trial); 1-SER-82-127 (Defense Exhibit 511). In fact, with only one exception, *none* of the defense exhibits in Covius's supplemental record excerpts were admitted at trial and one was specifically excluded. *Compare* 2-ER-61-62, *with* 1-SER-16; *see also* 4-ER-734:12-735:5 (district court sustaining objection to Defense Exhibit 517). Those unadmitted exhibits are not properly part of the record on appeal and this Court could decline to consider them. *See Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988) ("Papers not filed with the district court or admitted into evidence by that court are not part of the clerk's record and cannot be part of the record on appeal."); *Flo & Eddie, Inc. v. Pandora Media, LLC*, 789 F. App'x 569, 572 (9th Cir. 2019) (striking documents that "were not admitted in the district court and are not part of the record on appeal").

### B. Covius's belated attempt to challenge disability is meritless.

In passing, Covius suggests that Ebert's chronic migraines and fibromyalgia may not qualify as disabilities. Covius Br. at 23 n.9. To the extent Covius seeks affirmance on an alternative ground, that argument fails for at least three reasons.

First, Covius forfeited the argument twice over — once by failing to present it to the district court and again by failing to adequately develop it on appeal. *See In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014) (declining to address arguments not presented to district court); *Hernandez v. Garland*, 47 F.4th 908, 916 (9th Cir. 2022) (arguments not coherently developed in appellate brief are forfeited). In the district court, Covius did not raise the issue of disability when it orally moved for judgment as a matter of law. 5-ER-1013:23-1014:11; *see Sharp Structural, Inc. v. Franklin Mfg., Inc.*, 283 F. App'x 585, 588 (9th Cir. 2008) (party's failure to raise issue in Fed. R. Civ. P. 50(a) motion precludes later consideration of the issue). On appeal, Covius mentions the issue only once (in a footnote), but it does not meaningfully develop the argument, provide any supporting record citations, or address Ebert's fibromyalgia. Covius Br. at

28

23 n.9. Covius offers no reason to excuse its forfeitures and none is apparent.

Second, even if Covius had not forfeited the issue, the appropriate procedure would be to remand for the district court to resolve the question in the first instance. *See Cadena v. Customer Connexx LLC*, 51 F.4th 831, 841 (9th Cir. 2022) (declining to affirm on alternative grounds involving "disputed factual questions that the district court should decide in the first instance on remand"); *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014) ("Where an argument has been briefed only cursorily before this Court and was not ruled on by the district court, it is normally inappropriate for us to evaluate the argument in the first instance." (citation modified)); *see also Roth v. Foris Ventures, LLC*, 86 F.4th 832, 838 (9th Cir. 2023) ("[W]e must always be mindful that we are a court of review, not first view." (citation omitted)).

Finally, even if Covius had not forfeited the issue *and* this Court were inclined to reach it, the record contains more than enough evidence to establish that Ebert's conditions were disabilities. Under the ADA, the term "disability" includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). In turn,

"major life activities" include "caring for oneself," "performing manual tasks," and "walking." *Id.* § 12102(2)(a). EEOC regulations further provide that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA," and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i); *see also id.* § 1630.2(j)(1)(iii) ("[T]he threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis."); *id.* § 1630.2(j)(1)(v) (determining whether impairment substantially limits major life activity "usually will not require scientific, medical, or statistical analysis").[5]

Here, Covius stipulated that Ebert's chronic migraines and fibromyalgia were physical or mental impairments. 2-ER-101; *see also* 29 C.F.R. § 1630.2(h) (defining "[p]hysical or mental impairment").

---

[5] The sole decision Covius cites on this front (Covius Br. at 23 n.9) predated the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12101 *et seq.*, which "broadened the definition of disability under the [ADA]." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 430 (9th Cir. 2018); *see also Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1223 (9th Cir. 2022) (ADAAA expressly rejected narrow definition of "substantially limits"). The unpublished decision Covius cites was also issued before 2007. *See* 9th Cir. R. 36-3(c) (prohibiting citation of unpublished dispositions issued before January 1, 2007, except under limited circumstances not applicable here).

Furthermore, Ebert testified that her impairments—when active[6] and left untreated[7]—prevented her from caring for herself, performing manual tasks (like showering, doing laundry, and getting into bed), and even walking. *See, e.g.*, 5-ER-907:2-15 (Ebert testifying that conditions left her "housebound, unable to take care of [her]self; unable to shower because [of] the water hitting on the back of [her] head"); 5-ER-907:16-23 (Ebert testifying that her "fibromyalgia flared up to the point where [she] was briefly in a wheelchair for a few months"); 5-ER-910:17-911:3 (Ebert testifying that pain resulting from fibromyalgia affected her ability to "shake a hand or give someone … a hug"); 5-ER-912:25-913:7 (Ebert

---

[6] The ADA covers impairments that are "episodic or in remission" that "would substantially limit a major life activity *when active*." 42 U.S.C. § 12102(4)(D) (emphasis added); *see also Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1173 (7th Cir. 2013) (when episodic impairments are involved, the "relevant issue" is whether the impairments "substantially limited a major life activity when they occurred").

[7] The ADA provides that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as … medication…." 42 U.S.C. § 12102(4)(E)(i)(I); *see also Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 861-62 (9th Cir. 2009) ("Impairments are to be evaluated in their *unmitigated* state, so that, for example, diabetes will be assessed in terms of its limitations on major life activities when the diabetic does *not* take insulin injections or medicine and does not require behavioral adaptations such as a strict diet.").

testifying that pain-management medications enable her to "walk," "work," "drive," "take care of [her]self," "shower by [her]self," "get in [her] own bed," and "do [her] own laundry"); 5-ER-1006:8-11 (Ebert testifying that she "lost [her] ability to walk" when she tried to reduce dosage of pain-management medication).

Viewing the facts in the light most favorable to the EEOC and drawing all reasonable inferences in its favor, Ebert's testimony alone is sufficient to support a jury finding that her impairments substantially limited at least one major life activity and were thus qualifying disabilities. *See Gribben v. United Parcel Serv., Inc.*, 528 F.3d 1166, 1170 (9th Cir. 2008) (a plaintiff's "testimony alone regarding the significance of his impairment is sufficient to create a genuine issue of material fact at the summary judgment stage"); *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1058-59 (9th Cir. 2005) (similar), *overruled in part on other grounds by Murray*, 934 F.3d 1101; *McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1235 (9th Cir. 1999) (similar).

## CONCLUSION

For the foregoing reasons and those set forth in the EEOC's opening brief, the district court's judgment should be vacated and the case should be remanded for further appropriate proceedings.

Respectfully submitted,

CATHERINE ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

January 7, 2026

33

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____ 25-2118 _____

    I am the attorney or self-represented party.

    **This brief contains** _____ **6,410** _____ **words,** including _____ 16 _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

    I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
    29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select*
    *only one)*:
        [ ] it is a joint brief submitted by separately represented parties.
        [ ] a party or parties are filing a single brief in response to multiple briefs.
        [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** _ /s Steven Winkelman _____ **Date** _____ January 7, 2026 _____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

---

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**                                                                             *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that on January 7, 2026, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the Appellate Case Management System (ACMS). I certify that all counsel of record are registered ACMS users, and service will be accomplished via ACMS.

/s/ Steven Winkelman
STEVEN WINKELMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2564
steven.winkelman@eeoc.gov

January 7, 2026